## BAINTER AND BARNETT V. ROBERT FULTS.

1. PRESUMPTIONS—*In Favor of Judgment.* On petition in error to the supreme court, all presumptions must be construed in favor of the correctness of the findings and judgment of the court below.

2. FINDING; *General;* · *When Sufficient.* · In a case tried before the court without a jury, where the court is not asked to make special findings of fact, or to state the facts in detail, the findings will be considered sufficient if all the necessary facts are stated in the findings, although they may be stated in ever so general or comprehensive terms.

3. CONTRACTS AND DEEDS, *Procured by Fraud, Will be Set Aside and Annulled.* Where two men contrive and conspire to cheat and defraud a weak old man, mentally so weak as to be wholly incapable of managing his own affairs, and where they do by false and fraudulent representations cheat and defraud this old man, and thereby obtain his property for a grossly inadequate consideration, a court of equity may set aside and cancel all contracts or instruments by which these two men hold the old man's property, and may place the parties in the same situation and condition in which they were before the fraudulent transactions occurred. · - ·

4. —————— *Liability, in Equity Proceedings.* Where F. commences an action against B. and G. to set aside on the ground of fraud a certain executed contract, and certain deeds connected therewith, and to

place the parties in the same condition in which they were before the fraudulent transactions occurred, and where it was shown that B. only was to receive or did receive any benefit from the contract or deeds, and was the only person who was to receive or did receive any portion of F.'s property, and G. was not a party to any instrument to be set aside or canceled, and where a portion of the property received by B. from F. was $947 in money: *Held*, That it was error for the court to render a judgment jointly against B. and G. for a return of that money, although G. participated in the fraud. In an action in the nature of an action at law for damages a joint judgment against both would be proper. But in an action in the nature of a suit in equity like this, and under the facts of this case, such a judgment is not proper. The judgment should be against B. alone.

5. ———— *Property—Money Value.* Where a party fraudulently obtains certain articles of property from another, but receives the property as a definite sum of money, the person defrauded may elect if he chooses to treat such property as such sum of money.

6. FRAUDULENT CONTRACTS; *Void in Toto.* Where a person commences an action to set aside for fraud a certain contract, and to place the parties in their original condition, and where it was shown that under said contract the plaintiff, in consideration of certain real estate transferred to him by the defendant, transferred certain other real estate, and $947 in money to the defendant: *Held*, That the plaintiff cannot after the trial, and at the time when the judgment is rendered, have the judgment so rendered that he can afterward if he chooses elect to affirm the contract as to the real estate and treat the judgment as merely a judgment for damages for said sum of $947. The judgment should be to wholly set aside the contract and place the parties in their original condition.

## *Error from Douglas District Court.*

AT the August Term, 1873, *Fults* as plaintiff recovered judgment against *Bainter* and *Barnett*, defendants. The trial was by the court, without a jury, and the facts and conclusions found were as follows :

"1st. The plaintiff Robert Fults, on the 20th of October 1871, and for a long time prior thereto, was the owner of 160 acres of land in said Douglas county, described as the S.W.¼ of sec. 35, in township 12, of range 17, of the value of $3,500, and resided on the same with his family. He was then 69 years of age, illiterate, infirm from age and physical injuries, weak in mind, and incapable of managing his own affairs.

"2d. The defendant Ephraim Bainter, on the 20th of October 1871, and prior thereto was the owner of a certain lot in the city of Topeka, in Shawnee county, described as the north-half of lot No. 30, and all of lots 32, 34, and 36 on Quincy street north, in Crane's Addition, on one of which was a dwelling-house, all of the value of $2,500, and said Bainter resided with his family on said premises. The defendant Barnett was an auctioneer and real-estate agent, and resided in Topeka.

"3d. Some time prior to October 20th 1871, Fults met the said Barnett in Topeka, and told him he desired to sell his farm and other lands, and his personal property, and put this money out at interest, but that he would not sell unless he could realize at least $10,000 for all of it, and requested Barnett to undertake the sale of his property at auction. Barnett undertook to do so, to advertise and sell the property, real and personal, for one per cent. on sales, assured Fults that he knew all about the property, and that it was worth more than $10,000, and would bring more than that sum, cash down.

"4th. Afterward, and before the 20th of said October, said Bainter went to see Fults at the farm of the latter, and having inquired if that was the farm advertised by Barnett for sale, and being informed that it was, proposed to plaintiff to trade to him for the farm some property in Topeka. Plaintiff replied that such a trade would not suit him, and Bainter went away. A few days afterward Fults went to Topeka, and Barnett insisted on showing him Bainter's house and lots. Fults told Barnett it would not suit him to trade for city property, but went to see the house, and again said it would not suit him, and Barnett represented the house and lots as worth $35,000 and as desirable property.

"5th. On the 19th of October 1871, Bainter and Barnett went to the farm where Fults lived, and contrived and conspired to cheat and defraud the plaintiff, and obtain his property to their own gain and advantage, well knowing that plaintiff at that time was not capable of managing his own affairs, and by means of false and fraudulent representations induced him to agree to exchange the farm in the first paragraph herein described, and to pay to the said Bainter in addition, as boot-money, $1,000 in property, live stock, which Bainter was to have the privilege of bidding off at auction while the sale was progressing, and did bid off to the value and amount of $947.

" 6th. Three days afterward Bainter took possession of the farm, and commenced moving his furniture into the house, and Fults removed with his family into the house in Topeka, where he remained a short time, and afterward removed to a farm in the neighborhood where he had before lived, where he still resides. Bainter still continues to occupy the land mentioned in the petition.

" 7th. On the 11th of November 1871, under threats of vexatious litigation, (because of the refusal of plaintiff and his wife to make a deed,) deeds were made and exchanged. And as there was an outstanding mortgage for $1600 on said farm, Fults was required to execute a mortgage to Bainter for $1600 on the house and lots to save himself. Fults afterward paid off the mortgage on the farm, and caused it to be fully satisfied and discharged.

" 8th. Some time after the deeds were exchanged, Fults requested Bainter to trade back, and offered him $400 to do so, which offer Bainter refused. Fults then offered him $700, which Bainter also refused. And finally Fults offered him $947, or the amount of the value of the stock bid off by him, and Bainter refused to reëxchange with that difference, but afterward informed plaintiff that he would "rue," for $500 cash. Fults immediately went to one J. T. S. and made arrangements for getting $500, and so informed Bainter, but on learning from Bainter that his offer was for $500, *in addition to the stock*, Fults abandoned any further effort.

" 9th. Fults gave Bainter the farm and $947 for the town property; but Bainter would not give the farm for the town property, with the privilege of keeping the $947 worth of stock, unless Fults would pay him $500 as the difference in value. Had the plaintiff acceded to the demand, the parties would have been restored to their former lands, and Bainter would have received $1,447 from Fults without giving any consideration therefor in exchange.

"The court therefore finds for the plaintiff, and gives judgment in his favor against the defendants for $947, with interest at seven per cent. per annum from October 20th 1871, and decrees that the conveyances recited are fraudulent and void, and henceforth held for naught, and that reconveyances be made by the parties respectively, within ninety days, or in default of such conveyances on the part of defendant Bainter, this decree of the court shall be a sufficient conveyance of the farm to plaintiff Fults; and in default of a reconveyance by plaintiff Fults, defendant Bainter to have judgment against

him to the effect that defendant Bainter's title to the lands shall be confirmed." [Then follow a formal judgment and decree, in accordance with the conclusions so found by the court.]

From such judgment and decree, the defendants appeal, and bring the case here on error.

*Wilson Shannon*, for plaintiffs in error. [Reporter has been unable to obtain copy of brief.]

*Barker & Summerfield*, for defendant in error:

1. Before a decree or judgment will be reversed by this court, plaintiffs in error must have pointed out some fatal error, inconsistent with justice, and injurious to them, on the face of the record. They have not done this. Nor do they deny that they have committed a gross outrage on the defendant, but endeavor to evade justice by technicalities and quibbles, by stating matters in their argument, of which there is not even a hint in the record — such, for instance, as the statement that the defendant in error conveyed the property to his daughter, and is therefore unable to reconvey to Bainter, etc. On this statement counsel for plaintiffs in error spins a long argument, and asks the court to reverse the decree. It is not necessary at this time to either deny the premises nor refute the conclusion drawn therefrom, for neither is properly before the court.

2. It is claimed that even if the decree is good against Bainter it is void against Barnett. Why? Is it because he went with Bainter "to the farm where Fults lived, and conspiring and contriving to cheat and defraud Fults, and obtain his property to *their* own gain and advantage, well knowing that plaintiff at that time was not capable of managing his own affairs?" He who assists in the perpetration of a wrong is as much guilty as he who actually does the wrong. (2 Hilliard on Torts, 295, § 9.) We hope that the doctrine enunciated in *Wilbur v. Hubbard*, 35 Barb. 303, "that where two dogs, of different sizes, kill sheep in the dark, the jury have a right to determine, in the absence of direct proof, that *the*

*larger dog* killed the greater number of sheep," is not law, for it is now well known that the race is not always to the swift, nor victory to the strong. We have always been of the opinion that both Bainter and Barnett "killed the sheep," but counsel says Barnett did not get any of the spoils. If this is true, it only illustrates that the good old times are past and gone. Heretofore it has been conceded that there is honor even among thieves. But if the court shall determine that there ought to be no judgment against Barnett, it will not on that account vacate the decree, but will simply modify it to that extent.

3. Counsel complains that the court below did not state what the false and fraudulent representations were. If he is so anxious to have this court know the particulars of this transaction, why did he not bring the evidence here? We should have been very grateful to him if he had brought up the evidence so as to let the court see the particulars of this nefarious business. It is not the duty of a trial court in its findings to state every word that is said by the witness, but simply the conclusion from the whole testimony.

4. Plaintiffs in error claim that the facts do not justify a decree against Bainter. One can hardly imagine a stronger case of fraud. Here are two men, apparently shrewd and crafty; they come in contact with a man suffering from senile imbecility. By means well known to such characters, they obtain from him a farm worth $3,500, and personal property of the value of about $1,000. And what do they give Fults, who has scarcely the intelligence of a child, and with whom they should have dealt as fairly as with an infant, for all this? Property of the value of $2,500. The inadequacy of the consideration so gross as it is in this case, is alone ground for canceling the transaction. (Kerr on Frauds and Mistakes, 188, 189.) But when we add to this the physical and mental condition of defendant in error, is there any room for doubt left as to what a court of equity should do when such facts are brought before it?

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by Robert Fults against Ephraim Bainter and George Barnett, for the purpose of rescinding, setting aside, and canceling, on the ground of fraud, a certain executed contract, with certain deeds of conveyance, and other matters incidental thereto, whereby Fults exchanged some real estate and personal property belonging to him for some real estate belonging to Bainter. The principal questions discussed by plaintiffs in error are so obscurely and insufficiently presented by the record brought to this court that we think we can hardly consider them at all. The court below finds that the plaintiff below was at the time the alleged fraudulent transaction occurred, "sixty-nine years of age, illiterate, infirm from age and physical injuries, weak in mind, and incapable of managing his own affairs." Now how weak in mind was the plaintiff? Was he weak to idiocy, or only slightly weak? We cannot tell from the record. He was "incapable of managing his own affairs," but whether from age, illiteracy, physical infirmity, or mental imbecility, or all, we cannot tell. None of the evidence has been brought to this court, and nothing else shows it. Hence we are left to conjectures and presumptions only. Now, as all presumptions must be construed in favor of the correctness of the findings and judgment of the court below, we must presume in support of such judgment that the plaintiff was extremely weak in intellect, mentally so weak as to be "incapable of managing his own affairs," weak even to the very verge of idiocy; for mental weakness would best excuse him. The court below further finds that —

"On the 19th of October 1871, Bainter and Barnett went to the farm where Fults lived, and contrived and conspired to cheat and defraud the plaintiff and obtain his property to their own gain and advantage, well knowing that plaintiff at that time was not capable of managing his own affairs; and by means of false and fraudulent representations induced him to agree to exchange the farm in the first paragraph herein described, [Fults's farm,] and to pay to the said Bainter in

22—15 KAS.

addition as boot-money $1,000 in property, live stock, which
Bainter was to have the privilege of bidding off at auction
while the sale was progressing, and did bid off to the value
and amount of $947.

"On the 11th of November 1871, under threats of vexa-
tious litigation, (because of the refusal of plaintiff and his
wife to make a deed,) deeds were made and exchanged," etc.
Fults gave a deed for his farm to Bainter, and Bainter gave a
deed for his property to Fults.

Now, *how* did the defendants "contrive and conspire to
cheat and defraud the plaintiff?" ·And what were the "false
and fraudulent representations," which they used to effect
1. Presumptions their purpose?  We cannot tell from the record
in favor of
judgment.     of the case; but in order to sustain the judgment
of the court below, we must presume that they were such as
would authorize the rescinding of the whole transaction.
The counsel for plaintiffs in error claims that all these mat-
ters should have been set out in the findings of the court, in
elaborate detail.  He claims that the supposed false and fraud-
ulent representations should have been set out in the findings,
so that we could see whether in fact and in ₊law they were
such as would authorize the rescinding of the contract.  But
the defendants below did not ask the court to set out these
matters in its findings.  They did not ask the court to make
2. General    special findings on any subject.  Neither they,
findings.     nor the plaintiff, ask the court to make any find-
ings of any kind.  It is therefore the misfortune of the plain-
tiffs in error, and not of the defendant in error, that the
findings do not state the facts in more elaborate detail.  It
devolves upon the plaintiffs in error to show error, and not
upon the defendant in error to show that there was no error.
Under the circumstances of this case, we think all the neces-
sary facts in this respect are stated in the findings, although
stated in very general and comprehensive terms, and therefore
we think the findings in this respect are sufficient.  Therefore,
up to this point we cannot say that the court below committed
any error.

We think that where two men "contrive and conspire to

cheat and defraud" a weak old man, mentally so weak as to be wholly "incapable of managing his own affairs," and by "false and fraudulent representations" do cheat and defraud him, and thereby obtain his property for a grossly inadequate consideration, a court of equity may set aside and cancel all contracts or instruments by which these two men hold the old man's property, and may place the parties in the same situation and condition in which they were before the fraudulent transactions occurred. The irrelevant findings complained of by plaintiffs in error, cannot prejudice their substantial rights, and therefore are not sufficient grounds upon which to assign error. Barnett does not seem from the record to have got any of the plaintiff's property. He made nothing out of the transaction, and is not a party to either of the deeds. Therefore, the judgment rendered against him is erroneous. If the action had been one in the nature of an action at law for damages, instead of one in the nature of a suit in equity to set aside the contract and deeds, etc., and to place the parties in their original situation, it would have been different. If the plaintiff had sued for damages, he could have recovered damages against both Barnett and Bainter.

*3. Fraudulent contracts may be annulled.*

*4. Liability for fraud—in equity, and at law.*

Under the facts of this case we are inclined to think that the plaintiff had the right to elect to consider the personal property transferred from himself to Bainter, either as the specific articles transferred, or as the $947 in money for which such articles were taken. Hence, there was no error in rendering judgment against Bainter for that amount of money with interest. No question is made that the articles were not worth the money, and they were taken in lieu of the money.

*5. Property; when treated as money.*

As this was an action to rescind the contracts made between the parties, and to place them in their original situation and condition, it was error for the court below to so render the judgment that the plaintiff could, if he should choose, retain all the property that he received from Bainter, and still recover

3. Fraudulent contracts, to be rescinded in toto.

from Bainter for the amount of personal property which Bainter received from the plaintiff. Bainter was called into court to have the question determined, whether the transaction between himself and Fults, should be set aside, and each take the property he originally had. Bainter may have cared but little if such should be done. He may have been willing for Fults to make his own showing in such a case. He may have cared but little if the court should render a judgment in substance that the parties should "trade back." He may have cared but little for a jury trial in such a case as this, and in this kind of action he would not be entitled to a jury trial. And therefore, he may have contested this action but slightly. While if he had known that the judgment was finally to be rendered as one substantially for damages, he may have cared a great deal. In such a case he might have desired to have a jury trial, and if the action had been one for damages, he would have been entitled to a jury trial. He may have considered the property he gave worth as much as the property he received, and therefore might have been willing for a re-exchange of the property, but not willing that a judgment for a large amount of damages should be rendered against him. Now a plaintiff who prosecutes an action for relief, on the ground of *fraud*, should not prosecute one kind of action up to the very last moment, and then without notice or warning to the other party take a judgment as though his action was a different kind of action. The plaintiff in his petition states among other things as follows: "This plaintiff further shows that he has always been, since the discovery by him that the representations so made as aforesaid by said defendants were falsely and fraudulently made, willing to reconvey to said defendants all the right, interest, and everything whatsoever conveyed by said defendants to this plaintiff, upon reconveyance to him of the real estate and personal property hereinbefore mentioned, *and now here offers so to do.*" This was a standing offer of the plaintiff up to the time of the rendition of the judgment, and the judgment ought

not to relieve the plaintiff from fulfilling this offer. Nothing less than the fulfillment of said offer would be right or equitable in a case of this kind.

The judgment of the court below will be reversed as to Barnett. And it will be modified as to Bainter as follows: Bainter shall within some reasonable time to be fixed by the court below, pay to said Fults said $947, and interest, and shall convey to Fults by a good and sufficient deed, all the said real estate heretofore conveyed by Fults to Bainter, but upon this condition only, that Fults shall first convey to Bainter, by a good and sufficient deed all the said real estate conveyed by Bainter to Fults. In all other respects the judgment of the court below will be affirmed. This case will be remanded to the court below for further proceedings in accordance with the views herein expressed.

All the Justices concurring.