OSCAR HUFFMAN, APPELLEE, V. BANKERS AUTOMOBILE INSURANCE COMPANY ET AL., APPELLANTS.

FILED JUNE 24, 1924.   No. 22803.

1. Contracts: RESCISSION. The rule is that one who seeks to rescind a contract on the ground of fraud must, within a reasonable time, offer to return the property or the consideration which he received. But there are exceptions to the rule.

2. ———: ———: DELAY. Delay will not ordinarily defeat rescission of a contract obtained by fraud if the circumstances are not such as to render rescission inequitable and if the rights of creditors or stockholders, who have become such on the faith of the .defrauded party's subscription, have not intervened.

3. Election of Remedies: AMENDED PETITION: REFUSAL TO STRIKE. Plaintiff began an action against the defendant corporation, and its agents, to recover damages for false and fraudulent representations made by defendants whereby he was induced to buy 50 shares of its corporate stock at a grossly excessive valuation. At a considerable time thereafter he filed an amended petition against the same parties, wherein he tendered to defendants the stock, and also certain alleged dividends. which were sent to him by the corporation. Between the time of filing the original petition and the amended petition, the rights of others had not intervened. nor was the status of the parties changed in any material respect. Held. that the court did not err in refusing to strike the amended petition from the files on the alleged ground that plaintiff's original petition constituted an irrevocable elec-

tion of remedy, and that he was therefore estopped from maintaining an action on his amended petition. Substantially the same principle is involved in *Carson v. Greeley*, 107 Neb. 609.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Affirmed.*

*Cosgrave, Campbell & Ankeny, H. A. Reese* and *Sterling F. Mutz,* for appellants.

*J. M. Priest, contra.*

*Hall, Cline & Williams, amici curiæ.*

Heard before MORRISSEY, C. J., LETTON, DAY, GOOD, THOMPSON and DEAN, JJ.

DEAN, J.

This action is based on a rescission of a sale contract involving 50 shares of stock in the Bankers Automobile Insurance Company, for which plaintiff paid $100 a share. He tendered the stock to defendants, and also tendered certain alleged dividends in the sum of $210, which he received from the company, and seeks to recover the purchase price paid for the stock. It is alleged that the stock, at all times material to the issues herein, was of greatly less value than plaintiff paid for it. The argument is that the sale to plaintiff was induced by defendants' false and fraudulent representations, in respect of value, which plaintiff believed to be true, and upon which he relied and acted.

Plaintiff made the Bankers Automobile Insurance Company, hereinafter called the insurance company, and Charles Maixner, who was president of the insurance company, Oliver Sacks and Fred Noah, who were its agents and representatives, and A. H. Armstrong, F. P. Dwiggins and H. W. Kenyon, parties defendant. The action was dismissed as to Armstrong, and service of summons was not had upon Dwiggins or Kenyon. A default judgment was rendered against Maixner. The jury returned a verdict for plaintiff and against the insurance company, and Oliver Sacks and Fred Noah, for principal and interest, in the

sum of $5,897.78. A joint judgment was thereupon rendered on the verdict against the insurance company, and Oliver Sacks and Fred Noah. Except Maixner, all defendants appealed who were served with summons.

The action was originally begun against the same defendants to recover $5,000 damages on account of the alleged fraud. Two petitions are in the record. The original petition was filed within a reasonable time after plaintiff made the discovery of the facts of which he complains. In his subsequent amended petition he alleged substantially the same facts which he pleaded in the original petition, and he therein pleaded a rescission of the contract, and tendered to "defendants and each of them in open court the said 50 shares of stock," and also $210, which was sent to him by the company in two or more payments as alleged dividends. Plaintiff also pleaded that it was impossible for him to make an earlier tender to the defendants, because, when he first discovered the fraud, the agents from whom he purchased the stock were out of the state and could not be found. It was also disclosed that at the time the president of the insurance company was in the penitentiary. Hence, for these reasons he made his tender in his amended petition. And the proofs, in these respects, tend to support the allegations.

All defendants contend, in pleading and in briefs, that plaintiff is estopped from maintaining an action on his amended petition. The argument is that, by delay and by filing his original petition for damages, without first having rescinded his contract, he affirmed the contract and thereby elected his remedy and is bound thereby. But there are exceptions to the rule which will be hereinafter noticed.

October 5, 1921, the insurance company filed its answer, and therein pointed out the conceded fact that the department of trade and commerce, hereinafter called the Department, acting under an order of the district court for Lancaster county, January 14, 1921, took possession of the property and effects of the defendant insurance company, of every nature and description, under section 4, ch. 190, Laws 1919, being section 7748, Comp. St. 1922. The court

in its order, pursuant to the power conferred upon it by the laws relating to insurance companies (Comp. St. 1922, title V, art. III, secs. 7745-7765), ordered the Department to retain in its possession all the property of the insurance company, its records and effects, and to conduct its business and to do all things imposed upon it by the order until the further order of the court. As a part of the proceedings, preliminary to the making of the order in question, the district court found the insurance company's affairs "to be in such condition that its further transaction of business would be hazardous to its policy-holders, its creditors, its stockholders, and to the public." And, among other recitals in the record, it is disclosed that various violations of the law by the defendant company had been established.

After the appeal was filed in this court, and shortly before the case was submitted on oral argument, plaintiff, by an agreement with the Department, effected a settlement with the insurance company, with the court's approval, and dismissed his action in this court against the insurance company only, with prejudice. Of course, no further appearance was thereafter made here by the insurance company.

Sacks and Noah complain because the insurance company was dismissed without their knowledge, and because they received no consideration therefor and at no time approved or acquiesced therein, and that the joint judgment against them and the insurance company now stands against them alone. There is no ground for this complaint. It is obvious that their liability on the judgment would be decreased in such amount as plaintiff received upon settlement with the insurance company, and that the judgment can only be enforced against them as to the unpaid remainder. They further complain that in the settlement the defendant insurance company, or its successor, has accepted from plaintiff, and now holds as its own, all the shares and certificates of stock involved in this action.

However, Sacks and Noah contend, in substance, that they cannot properly be a party to this action because it has to do with the rescission of the sale of corporate stock

in which they have no proprietary interest. But by the settlement between plaintiff and the insurance company, and its acceptance of the stock and its withdrawal from the case, this embarrassment has been removed. And it may be noted that, in their joint answer, Sacks and Noah allege that the stock which plaintiff purchased "belonged to the defendant Charles Maixner," and in their brief they say that defendant "Noah testified that he was selling the stock of defendant Charles Maixner." Be that as it may, the question in regard to the value of the stock, from whomsoever purchased, and Maixner is a party defendant, was a question for the jury. And it is conceded in their brief that "an action in damages for fraud might properly be directed against the agent alone or against the agent and principal jointly, for the liability is joint and several." And they contend that Maixner was their principal.

In view of the argument, it is obvious that the defense of Sacks and Noah is not tenable. Besides, there is evidence to support a finding that Sacks and Noah knew the stock was of small value, as compared with the price for which they sold it. But in any event they should have known it. In view of all the facts, it is unthinkable that they should now escape liability on the specious plea that plaintiff was negligent in that he did not make inquiry in respect of the value of the stock, or on the plea of their own ignorance of values, which was within their power to discover and upon which it was their bounden duty to be informed. Neither Sacks nor Noah have been prejudiced by any of the facts disclosed by the record.

"Contributory negligence is not a defense to an action for deceit. If the false statement is made by one who may be fairly assumed to know what he is talking about, it may be accepted as true, without question and without inquiry, although the means of correct information are easily within reach. * * * It would, indeed, be singular to hold a swindling deceiver exempt from liability because he has swindled only foolishly credulous and trusting persons, and more singular still to hold that such a swindler may successfully plead the incredibility of his falsehood and the

folly of his victim's belief." *King v. Livingston Mfg. Co.*, 180 Ala. 118.

It is contended that Maixner, and either Sacks or Noah, or perhaps all three together, called on plaintiff at his farm home, about 25 miles distant from defendant's Lincoln office, and here made the false and fraudulent representations, perhaps in the first instance, which in part induced him to make the purchase, and that Sacks and Noah followed up and at other times saw and repeatedly urged plaintiff to invest, and always with the assurance that the stock would certainly increase greatly in value and that he could not lose on the investment. It clearly appears from the record that the representations so made to plaintiff were such as to convince the jury that they were not mere expressions of opinion, but were false and fraudulent representations of fact. *Farmers Cooperative Grain Co. v. Startzer, ante,* p. 19.

The general rule is that one who seeks to rescind a contract on the ground of fraud must, within a reasonable time, offer to return the property or consideration which he received. But we think the present case comes within recognized exceptions to the rule, as shown by well-established authority, which in effect holds that where the injured party has done no wrong, and where neither the defendant, nor any other person, has been shown to have been prejudiced in any lawful right by the delay complained of, the remedy by rescission may be invoked. *Independent Van & Storage Co. v. Iowa Mercantile Co.,* 184 Ia. 154; *Stotts v. Fairfield,* 163 Ia. 726. It has been held that an offer "to restore the *status quo* is sufficient." *Maine v. Midland Investment Co.,* 132 Ia. 272.

"Whether a subscriber's delay in rescinding his subscription for fraud was unreasonable, so as to constitute laches, depends upon the circumstances, as well as upon the extent of the delay. Even a long delay will not be fatal if satisfactorily explained, and if the circumstances are not such as to render rescission inequitable, or where the rights of creditors or stockholders, who may have become such on the faith of the defrauded party's subscription, have not

intervened." 2 Fletcher, Corporations, 1408, sec. 634.

Substantially the same principle is involved in *Carson v. Greeley*, 107 Neb. 609, wherein we held: "When a suit is begun for the rescission of a contract on the ground of fraud, the plaintiff may dismiss her action without prejudice, and begin an action at law to recover damages for the perpetration of the fraud under facts which are not inconsistent with the facts in the former action, and no estoppel is worked thereby, where the plaintiff has acquired no benefit in the former action and no detriment has been caused to the defendant in such action."

Defendants complain of the giving of certain instructions, and also of the refusal of the court to give certain tendered instructions. An examination of the record does not disclose reversible error in this respect. Evidently the jury's belief in plaintiff's veracity controlled the issue of fact. Error which would affect the result has not been shown.

The judgment is

AFFIRMED.

Note—See Contracts, 13 C. J. p. 621, sec. 680; Corporations, 14 C. J. p. 596, sec. 868. Election of Remedies, 20 C. J. p. 13, sec. 10.

―――――

The following opinion on motion for rehearing was filed December 4, 1924. *Former opinion set aside, and judgment of district court reversed as to certain defendants.*

1. **Corporations**: RESCISSION: PARTIES. Ordinarily, in an action against a corporation to rescind a contract for the purchase of its capital stock and to recover the purchase price paid therefor, on the ground of fraudulent representations of the agent in inducing the purchase of such stock, such agent is not a necessary or proper party defendant.

2. **Former Opinion Vacated.** Former opinion, *ante*, p. 277, set aside, and the judgment of the trial court, in so far as it affects defendants Noah and Sacks, is reversed and the cause of action against them dismissed.

Heard before MORRISSEY, C. J., LETTON, ROSE, DEAN, DAY, GOOD and THOMPSON, JJ.

DAY, J.

This case was before this court on a former occasion, the opinion being reported, *ante*, p. 277. The material facts are set out in our former opinion and need not be restated.

Upon a reargument, ordered by the court, the defendants Noah and Sacks specially urge that the trial court erred in not dismissing them from the case. It is argued by these defendants that, in the form of action presented by the amended petition upon which the action was tried, they were not proper parties defendant. There is some conflict in the testimony as to whether Noah and Sacks were the agents of the Bankers Automobile Insurance Company, or Charles Maixner, in selling the stock of the automobile insurance company to the plaintiff. That fact, however, is not material as we now view the case. As originally instituted, the action was one in damages for fraud, alleged to have been practiced by the automobile insurance company, Charles Maixner, and Noah and Sacks, in inducing the plaintiff to purchase a number of shares of stock in the automobile insurance company. The original action clearly shows that Noah and Sacks were merely agents, and that the alleged fraudulent acts were committed by them in inducing the plaintiff to purchase the stock. As originally brought, it is clear that the principal, as well as the agents who participated in the fraudulent acts, would be liable in damages, and therefore the agents were proper parties to be made defendants.

It appears, however, that after the action had been pending about nine months, and just prior to the trial, the plaintiff filed an amended petition in which he changed the form of his action from an action in damages to one for rescission. In the amended petition he set out the alleged fraudulent acts committed by Noah and Sacks, which induced him to purchase the stock, asked for a rescission of the contract, and prayed that the purchase price of the stock be paid back to him. The same parties were named as de-

fendants as in the original action. · The principal question presented by the record, as it now stands, is whether in an action for rescission the agents who by fraud procured the contract are proper parties defendant. The weight of authority sustains the rule that, in an action against a corporation for a rescission of a contract of purchase of its stock on the ground of fraudulent representations of its agent inducing the purchase, the agent is not a necessary or proper party defendant. The reason of the rule is apparent. In such case the purchaser tenders back to the principal the thing he has received and demands a return of the consideration given. The contract relations are between the principals, and not the agent. The liability of the agent for his wrong-doing to a purchaser is by force of other principles of law than those which measure and fix the rights of parties to a contract. It is true that the agents kept a part of the money paid by the plaintiff for the stock, but this was by virtue of a contract with their principal by which they were to receive a certain commission on all sales of stock made by them. From a legal standpoint their principal received all of the consideration paid by the purchaser. For cases supporting the view we have expressed, see *Ritzwoller v. Lurie,* 225 N. Y. 464; *Wimple v. Patterson,* 117 S. W. (Tex. Civ. App.) 1034. This court has approved the distinction between an action for rescission for fraud and one in tort for damages for the fraud. The two causes of action cannot be joined, as they are repugnant, one affirms and the other disaffirms the contract. *Alfree Mfg. Co. v. Grape,* 59 Neb. 777; *Baker v. Thomas,* 102 Neb. 401.

On the argument an attempt was made to show that the action was one in the nature of a conspiracy among all the defendants to defraud the plaintiff. This contention is not sustained by the amended petition. There is no charge that the wrong-doing was collusively done, or that it was the result of concerted action on the part of the defendants. The instructions given by the trial court clearly indicate that it regarded the action as one for rescission of the contract.

Upon a consideration of the record, we think the court

erred in not dismissing the action as to defendants Noah and Sacks.

Our former opinion in this action is set aside, and the judgment of the trial court, in so far as it affects defendants Noah and Sacks, is reversed and the cause of action as against them is dismissed.

JUDGMENT ACCORDINGLY.

Note—See Corporations, 14 C. J. p. 614, sec. 888.

---

DEAN, J., dissenting.

In the majority opinion it is said: "The weight of authority sustains the rule that, in an action against a corporation for a rescission of a contract of purchase of its stock on the ground of fraudulent representations of its agent inducing the purchase, the agent is not a necessary or proper party defendant."

I respectfully submit that the present case comes within well recognized exceptions to this rule.

In the brief of *amici curiæ,* counsel very fairly say:

"It is conceded that perhaps authority exists for joining principal and agents in such an action in equity at least in some jurisdictions, and notably in New York. This rule was announced and followed by Chief Justice Parker in *Mack v. Latta,* 178 N. Y. 525, 67 L. R. A. 126." Counsel then incorporate this excerpt from the *Latta* case, which, in principal, is in point.

"These decisions seem to us so well grounded in reason as to justify a court of equity, invoked to cancel a subscription for stock on the ground of fraud, and enjoin further calls for payment, and the prosecution of actions thereon, in bringing in the officers and agents of the corporation who were personally guilty of making the misrepresentations constituting the fraud, so that plaintiff may have complete relief in one action against both the corporation and the persons guilty of the fraud." *Mack v. Latta,* 178 N. Y. 525, 67 L. R. A. 126, and cases there cited.

In the present case plaintiff testified that Maixner, the

president of the company, and Noah and Sacks, all called on him at his farm home near Bennett, to induce him to purchase stock and that Maixner, at one time, as an inducement, told plaintiff the value of the stock was $100 a share, and that "it was a wonderful investment, the best I had ever made or ever could make."

Evidently the case was tried on the theory that the agents and the president of the company conspired together and, by concerted action, induced plaintiff to purchase. If so all defendants were properly joined as parties.

That evidence was introduced, which was not supported by the pleadings, was not assigned as error by defendants in their motion for a new trial. Hence the court did not err in overruling the motion.

That plaintiff believed, relied, and acted on the fraudulent representations of defendants sufficiently appears. The evidence was submitted to, passed on, and evidently accepted by the jury as the truth, and a verdict was thereupon rendered in favor of the defrauded plaintiff, and, with its verdict, and judgment thereon we should be content and not permit defendants to escape restitution of the fruits of the fraudulent practices of which complaint is made.

The stock argument in defense of fraudulent sellers of corporate stock of doubtful, or no value, is that a prospective, but timid or suspicious buyer, before purchasing, should make general inquiry about values and also call at the company's office and talk the subject over with its officers and representatives and examine the corporate books and, if suspicion still persists, he should go to the state house and look up the records which are required by law to be there recorded and, if he fails to do these things, and his purchase turns out to be valueless, his protest for relief in court should go unheeded. Nothing of the sort.

Corporate stock may be purchased from those offering it for sale the same as any other commercial commodity and, if the buyer is defrauded by the misrepresentation and deceit of the seller his remedy is no different from that of the defrauded buyer of any other article of merchandise which is offered for sale in the ordinary marts of trade.

True, the stock argument plan may be at times salutary, and it may perhaps be exercised by the prudent as a precautionary measure. But all buyers are not prudent. Anyhow it is not a preliminary obligation which must of necessity first be exercised, by the defrauded corporate stock buyer, before he may obtain relief in court from the wiles of a designing and unprincipled seller.

The ultra-niceties of technical rules of practice are not ordinarily invoked to open up a door of escape to relieve the wrongdoer of well merited punishment. At most, in the present confused and almost incomprehensible state of the record, the case should have been remanded for trial instead of being dismissed.

For the reasons stated herein and in view of the *Latta* case and the authorities there cited, I respectfully dissent from the conclusion of the majority.