399 P.2d 285

**Henry GRANDI and Kathryn Grandi, his wife, Plaintiffs-Appellees,**

v.

**R. S. LeSAGE and H. R. Claggett, Defendants-Appellants.**

No. 7465.

Supreme Court of New Mexico.

Feb. 15, 1965.

McCormick, Lusk, Paine & Feezer, Carlsbad, for appellees.

Wright & Kastler, Raton, for appellant LeSage.

E. Forrest Sanders, William W. Bivins, Las Cruces, for appellant Claggett.

CHAVEZ, Justice.

This is an appeal from a judgment ordering a rescission of plaintiffs' claim to a race horse and awarding, jointly and severally, compensatory and punitive damages.

On July 3, 1962, Henry Grandi and Kathryn Grandi, his wife, filed a complaint in two counts against defendants, R. S. LeSage and H. R. Claggett, which alleged, in the first count, that on January 6, 1962, defendant LeSage, as owner, and defendant Claggett, as his agent, employee and horse trainer, entered a race horse named "Cur-Non" in a claiming race with a claiming price of $3,500 at Sunland Park Race Track, Sunland Park, New Mexico; that in order to enter the race and to induce qualified persons to file claims, the defendants deposited with officials of the track a "Jockey Club Certificate of Foal Registration," which represented Cur-Non as a horse and

said representation was published in the official program; that defendants, in depositing said registration, knew said statement as to the sex of Cur-Non was false and was done with intent to induce plaintiffs and others to file claims on Cur-Non and thus defraud them; that plaintiffs, believing the statements, were induced to claim Cur-Non for the sum of $3,500, which claim was filed by them pursuant to custom and the rules of the track and the New Mexico State Racing Commission; that plaintiffs claimed Cur-Non expressly and exclusively as a stallion for themselves and others for a fee; that, prior to January 6, 1962, Cur-Non had been gelded and made useless as a breeder, and plaintiffs were thereby damaged in the sum of $3,-500; that it has been the general custom that a claimant is prohibited from making a prior inspection of an entry in a claiming race; that plaintiffs abided by said custom and, upon learning of the true sex of Cur-Non, immediately made demand upon defendants for the return of the claim price and their expenses incurred; that plaintiffs have expended mileage, traveling expenses, veterinarian's fees and hospital expenses, as necessary medical treatment for Cur-Non; and plaintiffs claimed punitive damages. In the second count of the complaint, plaintiffs adopted the applicable allegations of the first count and further alleged that defendants, by depositing the registration and inducing the daily racing

form to be published, warranted that Cur-Non was a horse, which warranty was false, since Cur-Non at the time was not a horse but a gelding.

On July 24, 1962, H. R. Claggett answered, admitting that he was agent and horse trainer of R. S. LeSage and that Cur-Non was entered in a claiming race at Sunland Park; that, as agent for LeSage, he deposited a certificate of registration describing Cur-Non as a horse, but that he was without knowledge as to whether said registration was published by the track in its official program; he admitted that Cur-Non was a gelding and denied all other allegations. As an affirmative defense, Claggett alleged the defense of laches.

On August 14, 1962, R. S. LeSage answered, adopting the answer of Claggett, and affirmatively alleging the defense that the rules of the New Mexico State Racing Commission, and more specifically Rule 207c, were in effect, to-wit: "When a claim has been lodged it is irrevocable and is at the risk of the claimant." and that plaintiffs, by removing the horse to Arizona, accepted delivery.

On February 4, 1963, trial was held. Prior to taking testimony, plaintiffs moved to amend the pleadings by adding the allegation that, upon learning of the true sex of Cur-Non, plaintiffs timely filed with the stewards of Sunland Park and with the state racing commission, their objection

pursuant to the applicable rules of racing, and that the stewards and the racing commission refused to rule upon said objection, on the grounds that this was a civil matter involving property of which they had no jurisdiction. This motion was granted.

On June 17, 1963, judgment was entered in which the trial court ordered:

"1. That plaintiffs' claim of Cur-Non be, and it is, hereby rescinded and the gelding Cur-Non be and he hereby is declared to be the property of the defendant R. S. Le-Sage.

"2. That plaintiffs shall return Cur-Non to the defendants at Sunland Park Race Track, Sunland Park, New Mexico, upon the written request of the defendants.

"3. That plaintiffs have judgment against the defendants, jointly and severally, on their Second Count for the claiming price of $3,500.00, with interest from 6 January 1962 at 6% per annum until paid.

"4. That plaintiffs have judgment on their Second Count against the defendants, jointly and severally, for the care, feeding and maintenance of Cur-Non from 6 January 1962 at $1.50 per day until the defendants request that said horse be returned to them at Sunland Park Race Track, Sunland Park, New Mexico.

"5. That plaintiffs have judgment on their Second Count against the defendants, jointly and severally, for punitive damages in the sum of $2,500.00.

"6. That plaintiffs take nothing by the First Count of their Complaint.

"7. That plaintiffs have their costs herein expended and incurred".

From this judgment, separate appeals were timely filed by both defendants.

The facts found by the trial court, stated in narrative form, are as follows: The horse in question, Cur-Non, was foaled on April 19, 1957, in Kentucky, and on November 1, 1957, was registered with the jockey club which issued its certificate of registration showing Cur-Non to be a chestnut colt. Defendant LeSage purchased Cur-Non from the breeder in July of 1958, and in 1960, at the direction of a former trainer, Cur-Non was gelded at Golden Gate Park Race Track, San Francisco, California, and LeSage knew the operation had been performed. Cur-Non was shipped to LeSage's ranch at Eagle Nest, New Mexico. In September 1961, H. R. Claggett was employed as a horse trainer and, at all times material, was acting within the scope of his employment. After employing Claggett, LeSage shipped

Cur-Non to Claggett and directed him to enter Cur-Non in the racing meet in the Fall of 1961 and Spring of 1962 at Sunland Park Race Track, Sunland Park, New Mexico. At this time, Claggett, although knowing that Cur-Non was a gelding, chestnut colt, thus indicating his sex to be registered Cur-Non as a four-year-old that of a stallion. At the same time, Claggett deposited the "Jockey Club Certificate of Foal Registration" showing Cur-Non to be a four-year-old colt, and at no time did he advise the race officials that Cur-Non was a gelding.

Each racing day, from information furnished by the owners and trainers, which information is also supplied to the newspapers, Sunland Park Race Track publishes an official program showing the entries, their names, age, color and sex. This official program and the newspapers are relied upon in a claiming race by qualified persons, and was relied upon by the plaintiffs, since it is the established custom, which plaintiffs abided by, that a claimant in a claiming race is prohibited from making a prior inspection of an entry that he intends to claim, other than that momentary view of the horse as he or she walks into the saddling paddock. Furthermore, prior to a race, it is the accepted practice in New Mexico, to treat a stallion by medication applied as well as freezing of the scrotum in order to draw the organs up and within the body so that the same will not hinder a horse in running, and such practice makes it difficult, if not impossible, for an observer, who has a momentary view of a horse in the saddling paddock, to determine if the horse is a stallion or a gelding.

In January 1962, plaintiffs, needing a thoroughbred stallion for breeding purposes, ascertained Cur-Non's blood lines and determined that he was entered in the "Fonner Park Purse," a claiming race with a claiming price of $3,500. Prior to this time, only Kathryn Grandi had observed Cur-Non, and neither plaintiff had ever inspected the horse. Therefore, believing and relying upon the statements contained in the official program, plaintiffs filed a claim for Cur-Non in accordance with the rules and custom of Sunland Park Race Track and the New Mexico State Racing Commission, for the express and only purpose of keeping him and standing him as a stallion, covering mares and getting foals for themselves and others for a fee. Plaintiffs were the successful claimants of Cur-Non and R. S. LeSage was paid the claiming price of $3,500 immediately after the race.

Following the race on January 6, 1962, plaintiffs' veterinarian discovered that Cur-Non had an old fracture of the proximal, the top portion of the sesamoid bone, and prior to January 6, 1962, defendants had the nerves of that foot blocked to kill the pain, in order for Cur-Non to be able to

race. On January 27, 1962, plaintiffs, still believing Cur-Non to be a stallion, shipped him to an animal hospital in Phoenix, Arizona, for an operation on the leg. This operation, although unnecessary for breeding purposes, was done because plaintiffs believed that it would relieve Cur-Non of pain and make him a better breeder. The operation, however, was unsuccessful, Cur-Non has since been unable to race, it is doubtful that he can ever race again, and he cannot be used for breeding purposes.

Complications developed after the operation and, on March 22, 1962, Cur-Non was returned to Sunland Park Race Track and, a few days later, shipped to plaintiffs' ranch at Carlsbad, New Mexico. Immediately upon the discovery that Cur-Non was not a stallion, plaintiffs made every effort possible to locate LeSage to advise him of the condition of Cur-Non. On April 11, 1962, plaintiffs sent a registered letter to LeSage at his address in Dallas, Texas, notifying him that Cur-Non was not a stallion, demanding return of the $3,500 claiming price, and offering to return and deliver the horse to Sunland Park, or any other place designated by LeSage within a reasonable distance. This letter was returned marked "Unclaimed," although it was correctly addressed to the defendant LeSage. On April 14, 1962, Kathryn Grandi notified LeSage in person at Sunland Park, New Mexico, of the condition of Cur-Non, that he was claimed for breed-

ing purposes, offered to return the horse and requested return of the claiming price. At that time, LeSage took the offer under advisement and later informed Mrs. Grandi that, under no circumstances, did he consider himself liable and refused the offer. Prior to this time, on April 4, 1962, Mrs. Grandi made a verbal complaint to the officials of Sunland Park and to the state racing commission, which was later reduced to writing and filed on April 14, 1962. This protest was timely filed, but the state racing commission refused to hear the complaint on the ground that it did not have jurisdiction.

Joint and several judgments were awarded against the agent, Claggett, for: (1) return of the $3,500 purchase price; (2) the expense incurred by plaintiffs in the care, feed and maintenance of the horse; and (3) punitive damages in the sum of $2,500. Claggett initially attacks the judgment upon the ground that, never having received any of the purchase price, he is not liable for its return upon rescission of the sale by the buyer.

We think Bainter and Barnett v. Fults, 15 Kan. 323, is founded upon sound reasoning and succinctly states the rule applicable under these circumstances. There, the plaintiff, Robert Fults, elderly, illiterate and weak in mind, was induced by Bainter, who owned property in town, and Barnett, a real estate agent, to exchange

his farm and an amount of money for Bainter's house in town. The exchange was made, but later plaintiff sued to rescind on the ground of fraud. At the trial, the court ordered a reconveyance and granted judgment for plaintiff against both defendants for the amount of money exchanged. On appeal, the judgment was reversed as to the real estate agent, the court saying:

> "* * * Barnett does not seem from the record to have got any of the plaintiff's property. He made nothing out of the transaction, and is not a party to either of the deeds. Therefore, the judgment rendered against him is erroneous. If the action had been one in the nature of an action at law for damages, instead of one in the nature of a suit in equity to set aside the contract and deeds, etc., and to place the parties in their original situation, it would have been different. If the plaintiff had sued for damages, he could have recovered damages against both Barnett and Bainter."

See also, Ritzwoller v. Lurie, 225 N.Y. 464, 122 N.E. 634; Wolfram v. Shifflet, Cumber & Co., 244 Mich. 518, 221 N.W. 621; Huffman v. Bankers' Automobile Ins. Co., 112 Neb. 277, 283, 199 N.W. 716, 200 N.W. 994; Hager v. Scott, 125 Wash. 635, 216 P. 840. It follows that the judgment against Claggett for return of the $3,500 purchase price must be reversed.

Claggett next asserts that a buyer who elects the remedy of rescission had no right to recover damages against the seller's agent for expenses incurred by such buyer in the care and custody of the goods. This, he contends, is so because a defrauded buyer had a free choice of remedies at common law, but was precluded from recovery of damages if he elected rescission. Thrams v. Block, 43 N.M. 117, 86 P.2d 938. He points to the fact that even though the Uniform Commercial Code grants such a rescinding buyer the right to recover such expenses from the seller, it does not allow a recovery therefor against the seller's agent.

Sections 50A–2–711(1)(b), 713 and 715(1), N.M.S.A., 1953 Comp., give a buyer, who rightfully rejects or justifiably revokes acceptance of the goods, the right not only to rescind and recover back the purchase price paid, but, in addition, the right to recover incidental damages resulting from the seller's breach, including expenses reasonably incurred in the care and custody of such goods. While the Code permits recovery for such expenses, we see nothing therein evidencing an intent that an agent of the seller shall be held liable along with the seller under the circumstances here present and contrary to the rule as announced in the cases cited supra. The judgment against Claggett for such expenses must, therefore, be reversed.

■ Finally, Claggett argues that, absent a recovery against him of actual damages, no award may be made of punitive damages. We agree. It is well settled in this jurisdiction that punitive damages may not be recovered unless there has first been a recovery of compensatory damages against such person. Crawford v. Taylor, 58 N.M. 340, 270 P.2d 978. See also, Faubion v. Tucker, 58 N.M. 303, 270 P.2d 713. Even though the breach of contract was accompanied by a fraudulent act, Whitehead v. Allen, 63 N.M. 63, 313 P.2d 335, it does not authorize the recovery of punitive damages unless there has been an award of actual damages. Due to our holding that actual damages are not recoverable in this case against Claggett, the judgment against him for punitive damages must, likewise, be reversed.

By reason of our determination that no damages are recoverable against Claggett, the several additional questions argued by him need not be discussed.

■ Before entering into the merits of the dispute as it applies to LeSage, we must first dispose of his attack on the trial court's jurisdiction. He argues:

"I.   That the trial court did not have jurisdiction of the subject matter of this action, since Article 6, Chapter 60, New Mexico Statutes Annotated, 1953 Compilation, as Amended, created the New Mexi-

co Racing Commission which has absolute control over horse racing in New Mexico and from the rulings of this special tribunal there is no statutory authority of appeal."

Three rules of the New Mexico State Racing Commission, adopted under authority of § 60-6-7, N.M.S.A., 1953 Comp., are especially relied upon by him in support of his assertion that the court lacked jurisdiction. Rule 207a declares that:

"When a claim has been lodged it is irrevocable and is at the risk of the claimant."

Rule 219 of the New Mexico State Racing Commission states:

"Any objection on the ground of fraudulent or willful mis-statement or omission in the entry under which a horse has run or on the grounds that the horse which ran was not the horse he was represented to be in the entry or at the time of the race, or was not of the age he was represented to be, may be received within any time after three (3) months after the race."

Rule 219 was later amended by Rule 325, which reads:

"Any objection on the ground of fraudulent or willful mis-statement or omission in the entry under which a horse has run or on the grounds that the horse which ran was not the horse he

was represented to be in the entry or at the time of the race, or was not of the age he was represented to be, may be received by the Board of Stewards at any time after the race, or such objection may be made to the Racing Commission at any time after the close of the meeting in which the race objected to was run."

Although § 60–6–7, supra, grants to the Commission power to make rules:

" * * * to the end that all horse races shall be conducted with fairness and that the participants therein and the patrons thereof shall be protected against all wrongful, unlawful or unfair conduct and practices of any and every kind * * *."

it is evident from the statute, as well as from a reading of the quoted rules adopted pursuant thereto, that the penalties are to be assessed against licensed tracks. Disputes involving losses through the fraud of one participant in a claiming race against another participant were never intended to be settled by the track authorities. Neither the statute nor any rule adopted pursuant thereto grants original authority to the Racing Commission to determine such disputes nor to enforce any order of the track authorities with respect thereto. We find nothing in either the statute or rules which denies to the district court jurisdiction over the type of dispute involved here.

By his point VI, appellant LeSage argues:

"VI. That under the provisions of Article 2, Chapter 50A, New Mexico Statutes Annotated, 1953 Compilation, as Amended and Supplemented, the plaintiffs accepted delivery of Cur-Non since after reasonable opportunity to inspect him:

"(a) They did not reject Cur-Non within a reasonable time after they had taken delivery from the defendant LeSage; and

"(b) They had him treated, removed from the State of New Mexico to the State of Arizona, and there caused him to be operated upon by a veterinarian, all said acts being inconsistent with the ownership of defendant LeSage."

Notwithstanding there may have been an acceptance within the meaning of § 50A–2–606, N.M.S.A., 1953 Comp., under § 50A–2–608, a buyer who justifiably revokes his acceptance has the same right to rescission as though he had rejected the goods in the first place. Such revocation is justifiable if he accepted them:

"(b) without discovery of such nonconformity if his ac-

ceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

"(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

" *    *    *"

Even assuming an acceptance by the buyer, such acceptance was effectively revoked in accordance with § 50A–2–608, supra.

■ LeSage argues that plaintiffs had been guilty of laches in failing to promptly examine Cur-Non and asserts that plaintiffs had no right to rely on representations made in the racing form. The trial court specifically found otherwise. A review of the record convinces us that the contrary findings by the trial court are supported by the evidence and, consequently, they will not be disturbed on appeal. Bogle v. Potter, 72 N.M. 99, 380 P.2d 839.

■ Findings 3 and 10, to the effect that the agent Claggett was acting within the scope of his employment when he entered

the gelding in races as a horse, are attacked as unsupported by the evidence and as being in conflict with finding 8, which was, in substance, that LeSage told Claggett that the horse was a gelding and to enter it in the race.

In New Mexico-Colorado Coal & Mining Co. v. Baker, 21 N.M. 531, 157 P. 167, it was said:

" *    *    * 'The secret or private instructions to an agent, however binding they may be as between the principal and his agent, can have no effect on a third person who deals with the agent in ignorance of the instructions, and in reliance on the apparent authority with which the principal has clothed him.' "

See also, South Second Livestock Auction, Inc. v. Roberts, 69 N.M. 155, 364 P.2d 859. A review of the record convinces us that the findings made by the trial court have substantial support in the evidence.

■ LeSage argues that punitive damages may not be awarded against him because there is no evidence that he participated in, authorized, or ratified the fraudulent acts of his agent. While it was said in Stewart v. Potter, 44 N.M. 460, 104 P.2d 736, that ordinarily the principal must, in some way, be connected with the fraud or tort of the agent by participation or ratification to support punitive damages against him, the general rule respecting ratification by a principal is aptly stated in

Adrian v. Elmer, 178 Kan. 242, 284 P.2d 599, as follows:

" * * * that when a principal, expressly or impliedly, elects to ratify an unauthorized act, he must, so far as it is entire, ratify the whole of it, and he will not be permitted to accept its benefits and reject its burdens. Ratification in agency is an adoption or confirmation by one person of an act performed on his behalf by another without authority. The substance of the doctrine is confirmation after conduct, amounting to a substitute for prior authority. The ratification by the principal of an unauthorized act of his agent is equivalent to an original grant of authority. Upon acquiring knowledge of the agent's unauthorized act, the principal should promptly repudiate the act. Otherwise, it will be presumed he has ratified and affirmed it. Will v. Hughes, 172 Kan. 45, 53, 54, 238 P.2d 478; Flitch v. Boyle, 149 Kan. 834, 89 P.2d 909; Watson v. Woodruff, 154 Kan. 61, 114 P.2d 864; Aultman Thrashing & Engine Co. v. Knoll, 71 Kan. 109, 79 P. 1074; Isaacs v. Jackson Motor Co., 108 Kan. 17, 193 P. 1081; 2 C.J.S., Agency, § 34[a]; 2 Am.Jur., Agency, § 232. The defendant, having received the benefits of the sale by his acceptance and retention of the consideration, cannot now reject the burdens incident thereto."

Punitive damages were held to be properly awarded in an action for breach of contract accompanied by fraudulent acts, wanton in character and maliciously intentional, where compensatory damages had been granted. Whitehead v. Allen, supra. Since the Commercial Code, § 50A–2–711, N.M.S.A., 1953 Comp., permits recovery of damages in an action for rescission, punitive damages may likewise be recovered in such action where the breach is accompanied by fraudulent acts which are wanton, malicious and intentional. Stewart v. Potter, supra. We have examined the record and conclude that the trial court's finding, that appellant LeSage saw a Sunland Park program listing Cur-Non as a four-year-old colt when, in fact, he knew he was a gelding, and that he failed to advise the officials of such error, together with finding 38:

"38. On or about 14 April 1962 plaintiff Kathryn Grandi notified defendant LeSage in person at Sunland Park, New Mexico, of the condition of Cur-Non and that he was claimed for breeding purposes and offered to return said horse and requested the return of the claiming price. Defendant LeSage took the offer under advisement and later advised Mrs. Grandi that under no circumstances did

he consider himself liable and refused said offer."

and finding 49:

"49. Defendant LeSage, with full knowledge of all material facts of plaintiffs' protest and claim against him and after demand was made by plaintiffs for the return of the money, continued to employ defendant Claggett as his trainer until the end of the spring meeting at Sunland Park Race Track."

are sufficient evidence of ratification. It is apparent to us that LeSage had knowledge of the agent's unauthorized action and failed promptly to repudiate it and, that having received the benefits of the sale by his acceptance and retention of the consideration, he cannot now reject the burdens incident thereto. The award of punitive damages was not error.

It follows from what has been said that the judgment must be reversed as to the appellant Claggett and must be affirmed in all respects as to the appellant LeSage. The cause is remanded to the district court with instructions to proceed in a manner not inconsistent with what has been said.

It is so ordered.

NOBLE and MOISE, JJ., concur.