JOSEPH LIMOLI & another vs. PASQUALE ACCETTULLO &
another.

Middlesex.  November 5, 1970. — December 14, 1970.

Present: TAURO, C.J., SPALDING, KIRK, REARDON, & QUIRICO, JJ.

*Deceit. Sale*, Rescission. *Equity Jurisdiction*, Rescission. *Damages*, On
rescission. *Equity Pleading and Practice*, Master: findings.

Findings of fact by a master in a suit in equity became conclusive between
the parties where no objections or exceptions were taken to the master's
report and no appeal was taken from the interlocutory decree con-
firming the report, and it was the duty of the trial judge and of this
court on appeal to see that the proper final decree was entered on
those facts.  [382]
Plaintiffs seeking to rescind a purchase from the defendants of a retail
ice cream business and its real estate and equipment by reason of
intentional misrepresentations by the defendants with respect to the
existence and condition of the sewage disposal system on the property,
in a suit in equity commenced less than one month after the plaintiffs
learned of a sewerage problem and at a time when they still owned the
real estate and equipment purchased, were not precluded from equi-
table relief by their failure to offer to return the property before com-
mencing suit [384]; nor were the plaintiffs barred from relief by
inability to return the property subsequently by reason of foreclosure
by a bank of a first mortgage on the real estate and repossession and
sale of the equipment by the defendants [385].
Where it appeared in a suit in equity that the plaintiffs were entitled
to equitable relief by reason of intentional misrepresentations by the
defendants with respect to the sewage disposal system on property
which they sold to the plaintiffs together with a retail ice cream business
thereon and its equipment, but that the plaintiffs were unable to re-
turn the property to the defendants because of foreclosure of a first

───────────────

mortgage on the real estate by a bank and repossession and sale of the equipment by the defendants, it was held that the defendants should repay to the plaintiffs the amount which they paid from their own money on account of the purchase price and the amount which they paid on a second mortgage to the defendants, less the fair and reasonable value, if any, of the plaintiffs' use of the real estate from the date of the conveyance to them to the date of the bank's foreclosure and the value of the plaintiffs' use of the equipment from the date of the conveyance to them to a date when the board of health closed the ice cream business, and that the second mortgage note should be cancelled and that mortgage discharged by the defendants. [386]

BILL IN EQUITY filed in the Superior Court on October 26, 1967.

The suit was heard by *Spring*, J., on a master's report.

*Paul A. Good* for the defendants.

*Alexander E. Finger* for the plaintiffs.

QUIRICO, J.   This is a suit in equity seeking rescission of the plaintiffs' purchase of real estate, chattels and a retail business from the defendants. The plaintiffs allege that they were induced to make the purchase by intentional misrepresentations by the defendants concerning the existence and condition of sewage disposal facilities on the land.

The case is before us on the defendants' appeal from the final decree granting relief to the plaintiffs on the basis of facts found by a master. There were no objections or exceptions to the master's report and there is no appeal from the interlocutory decree confirming the report. "The findings of fact of the master thus became conclusive between the parties." *Perry* v. *Oliver*, 317 Mass. 538. *Tucker* v. *Poch*, 321 Mass. 321, 322. It is now our duty, as it was the duty of the trial judge, "to see that the final decree is such as the law requires upon the facts found by the master." *Fred C. McLean Heating Supplies, Inc.* v. *Westfield Trade High Sch. Bldg. Comm. of Westfield*, 345 Mass. 267, 271. *Lupien* v. *First Fed. Sav. & Loan Assn.* 351 Mass. 311, 314.

The facts found by the master are stated to the extent necessary for this decision. On June 28, 1966, the plaintiffs purchased from the defendants a parcel of land with a dwelling and a store thereon located at 204–206 Main Street in North Reading, Massachusetts, together with the fixtures,

equipment and good will of a retail ice cream business which the defendants conducted on the premises. The purchase price of $55,000 was paid by the plaintiffs as follows: $43,000 in cash (consisting of $13,000 of their own money and $30,000 which they borrowed from a bank on a first mortgage of the real estate purchased), and the balance of $12,000 by a note to the defendants, secured by a second mortgage on the same real estate. Thereafter the plaintiffs made four payments in the total amount of $625.93 on the second mortgage.

Before making the purchase the plaintiffs inspected the property and discussed the sewage disposal facilities with the defendants. The defendants told the plaintiffs that "they had a system that was good and that it gave them no trouble for 19 years." They pointed out to the plaintiffs a place to the rear of the house and the store and on the lot being sold which they said was the location of the septic tank or tanks. The defendants knew that these statements were not true. About two years previously they had received a complaint from a neighbor about the sewage disposal system, and at that time they knew that there was no septic tank on the lot where the house and the store were located. They also knew that the sewage from those buildings flowed by pipes under a street which adjoined the lot on one side and continued to a second lot of the defendants located on the opposite side of the street. The sewage ultimately entered a septic tank on the second lot, but because the tank was inadequate, it overflowed the surface of the second lot. The defendants knowingly misrepresented the facts on the sewage disposal system intending that the plaintiffs rely thereon. The plaintiffs did rely on them in purchasing the property.

On or about September 29, 1967, the plaintiff Joseph Limoli received a letter from the town board of health stating that "the property was in violation of the State Sanitary Code in that . . . [sewage] was being discharged to the surface of the ground and the said plaintiff was given five (5) days to remedy the situation and abate the nuisance."

The plaintiffs promptly engaged a registered sanitarian to look into the sewerage problem. He made tests on their property and concluded that it was impossible to repair the condition for the reasons that the "lot had a high water table, the ground was clay with a high degree of plasticity not suitable for subsurface disposal of . . . [sewage] and the physical size of the deeded property was too small to comply with the State Sanitation Code." The study also disclosed that there was no septic tank on the lot. The plaintiffs made no changes or repairs on the sewerage system.

On October 9, 1967, the board of health ordered the plaintiffs' ice cream parlor business to be closed, and the director of public health suspended their food service permit. The business was thus closed. The board permitted the plaintiffs and their children to continue to reside in the house on the property, using the toilet and bath facilities, and they were still residing there in August, 1969.

In June, 1968, the bank foreclosed its first mortgage on the real estate and was the purchaser at the foreclosure sale. The record does not indicate the payments, if any, made on that mortgage, the balance due thereon when it was foreclosed, or the price realized from the foreclosure sale. On November 3, 1969, the defendants repossessed the chattels they had sold the plaintiffs in 1966, and they were sold at public auction by order of the defendants. The record does not indicate the nature of the defendants' security interest, if any, in the chattels or the price received for them at the auction sale.

The plaintiffs filed their bill for rescission on October 26, 1967, which was less than one month after they learned of the problems with the sewerage system. At that time they still owned the real estate and chattels they had purchased from the defendants, and they were in a position to return them to the defendants. The master's finding that the plaintiffs had not previously offered to return the chattels does not affect their right to rescind. The filing of the bill in this case is itself an offer to rescind and notice of intention to rescind. "The foundation of this bill is that the rescission

is not complete, and it asks . . . [the] court to make it so."
*Thomas* v. *Beals,* 154 Mass. 51, 54–55.  *Parker* v. *Simpson,*
180 Mass. 334, 343.

Since filing their bill in this case the plaintiffs have lost
their real estate by the bank's foreclosure of its first mortgage
and they have lost the chattels by the defendants' repos-
session and sale of them.  Thus, although it appears that
they had the right to rescind when they filed their bill, they
are not now in a position to do so because they cannot return
the land and chattels to the defendants.  While this inability
to restore the property to the defendants might bar recovery
if the plaintiffs were seeking relief on the basis of rescission
in an action at law (see *Owen* v. *Button,* 210 Mass. 219, 222),
"the rule is more liberal in equity and it has been held that,
where complete restoration is not possible, rescission may,
nevertheless, be granted upon such equitable conditions
as would amply protect the rights of the defendant."
*Bellefeuille* v. *Medeiros,* 335 Mass. 262, 266, and cases
cited.  Restatement: Restitution, §§ 66 and 67.[1]

We are of opinion that because of the circumstances which
have brought about the plaintiffs' inability to restore the
real estate and chattels to the defendants, they are not pre-
cluded from obtaining equitable relief against the defendants.
While it is true that the plaintiffs might have avoided the
bank's foreclosure of the mortgage on the real estate by
making whatever payments were required for that purpose,
they were not under any duty to the defendants to do so.
They were not required to expend still more money to retain
the property for the ultimate benefit of the defendants

---

[1] Section 67 (1) provides: "If a person entitled to rescind a transaction
upon offering to return to the other party anything which he received, tenders
such thing and the tender is refused, his exercise of reasonable care in its
protection is a condition to restitution; if, however, through no fault of his
it is lost, stolen, destroyed, or damaged, he is excused from keeping good
the tender."  As an illustration of the application of this rule the Restatement
says: " 1. A purchases Blackacre from B, induced thereto by B's fraudulent
misrepresentations.  Blackacre is subject to a mortgage in the hands of a
third person.  Upon discovery of the facts A tenders B a deed to Blackacre
which B refuses.  Shortly thereafter, the mortgagee forecloses upon Black-
acre and sells it to a third person for the amount of the mortgage debt.  A is
entitled to restitution from B upon offering to pay B the value of the use of
Blackacre, if any, during the period of A's occupancy."

whose intentional misrepresentations entitled the plaintiffs to rescind and pay no more. The defendants who were at fault had the same opportunity to protect themselves by making payments on the bank mortgage. The inability to return the chattels resulted from the defendants' action in repossessing them and then selling them at auction.

The final decree entered by the Superior Court ordered that the defendants (1) repay to the plaintiffs the sum of $13,625.93 plus interest thereon, (2) cancel and deliver to the plaintiffs the $12,000 note and second mortgage given to secure it, and (3) execute and deliver to the plaintiffs a discharge of the second mortgage. We are of the opinion that on the facts found by the master the final decree was correct except in one regard. The defendants are entitled to have the amount payable by them to the plaintiffs reduced by the fair and reasonable value, if any, of the plaintiffs' use (a) of the real estate from the date of the conveyance to them on June 28, 1966, to the date of the bank's foreclosure in June, 1968, and (b) of the chattels involved from June 28, 1966, to October 9, 1967, when the board of health closed the ice cream parlor business. The amounts of these reductions, if any, will require further proceedings in the Superior Court.

The final decree is vacated and further proceedings are to be held in the Superior Court in accordance with this opinion.

*So ordered.*