KINKADE et ux, *Appellants,*
*v.*
MARKUS et ex, *Respondents.*
(No. 37-563, CA 9992)
589 P2d 1142

Barbara Page McFarland, Portland, argued the cause and filed the brief for appellants.

Thomas A. Huffman, Hillsboro, argued the cause for respondents. With him on the brief was Huffman and Zenger, Hillsboro.

Before Schwab, Chief Judge, and Lee, Richardson, and Joseph, Judges.

LEE, J.

**LEE, J.**

This is a suit for rescission of a land sale contract. The posture of the parties is unique because after the vendors filed a complaint for specific performance, the purchasers filed a cross-complaint seeking rescission of the contract based upon fraud. Thereafter, the vendors dismissed their complaint for specific performance and the case was tried on the cross-complaint for rescission. The court granted rescission and money "damages" to the purchasers. The vendors appeal on the grounds that the court erred (1) in finding that they perpetrated fraud, and (2) in awarding both rescission and "damages."

George and Linda Kinkade (vendors) lived on the property from October, 1973, until December, 1976, during which time they experienced certain problems with the water system. In October, 1974, a representative of the local water softening company made a service call and found that the water equipment on the property was "plugged up" with blue-green sand. In June, 1976, the sand filter tank failed to function properly and the water was described by the water company representative as "real dark or black" and he recommended that the well be pumped but no action was taken. On December 30, 1976, the property was sold to purchasers, Virgil and Syble Markus.

The property consists of 11.32 acres in Banks, Oregon. The real estate listing which described the property stated that there were four wells and that the main well pumped 50 gallons per minute. The purchasers were particularly interested in water because they owned livestock and intended to have a garden and the vendors knew this. Prior to signing the earnest money agreement there was a discussion between the parties about the quantity and quality of the water. Upon the request of Mrs. Markus, Mrs. Kinkade gave her a drink of water, and stated:

" '*There is plenty of water and it is good water,* but there is iron and hardness in it. * * * Some people feel

that the iron is healthy * * * the equipment that [is] down there [in the basement is] supposed to take care of the hardness.' "

Approximately three months after signing the contract for the purchase of the property and occupying it, the purchasers discovered the "black water" problem. Thereafter, they were unable to find a satisfactory method of obtaining 50 gallons per minute of clear water.[1] If the water system were adjusted so that there was plenty of water, then it was not good water; if good water could be obtained, it was inadequate.

In April, 1977, the purchasers notified the vendors that they were rescinding the contract and vacating the property and tendered vendors a deed to the property. By that time, the purchasers had lived on the property for approximately four months, and they had expended at least $7,405 in contract payments and improvements. There was evidence that the reasonable rental value of the use of the premises was $225 a month.

■ To sustain rescission of a contract based on fraud, it must be established that one of the parties to the contract made a false representation of a material fact with knowledge of its falsity or ignorance of its truth with the intent that it be acted upon in a manner reasonably contemplated. The recipient of the representation must, in turn, rely upon its truth with a right to so rely and with ignorance of its falsity. *See Blank v. Far West Federal Savings,* 281 Or 397, 404, 575 P2d 148 (1978); *Martin v. Eagle Development Co.,* 41 Or 448, 455, 69 P 216 (1902).

■ In the instant case it is undisputed that the purchasers were assured that there was "plenty" of "good" water. In light of the purchasers' intention to raise livestock and grow a garden, this was a representation

---

[1] One water company suggested a system which would have required approximately $2,500 worth of equipment plus a shed and could not be guaranteed. An alternative approach limited the water to ten gallons per minute.

of a material fact. *See Zeleny et ux v. Karnosh,* 224 Or 419, 356 P2d 426 (1960). We find that there is clear and convincing evidence that the vendors had water problems while they resided on the property; that they knew the statement was false; and that the purchasers relied on the representation to their detriment. The rescission was properly granted.

■ The vendors also contend that the trial court erred in awarding "damages" to the purchasers. The general rule is that one who is induced to enter a contract by fraud may, upon discovery of the fraud, elect his remedy—he may either rescind the contract and be returned to his former position or he may affirm the contract and sue for damages suffered by reason of the fraud. *Federici et ux v. Lehman et al,* 230 Or 70, 71, 368 P2d 611 (1962). However, this rule cannot be applied without first examining how the trial court used the word "damages."

When the word "damages" is used to mean "any recovery in money," the money award must be analyzed to determine whether it permits the recovery of the *value promised* (damages for breach of contract) or the recovery of the *value received* (damages in the nature of restitution.) This distinction is made in 5 Corbin, Contracts, § 1112 (1964):

> "* * * By giving a judgment for *damages for breach,* the court tries to put the injured party in as good a position as he would have been in, *had the contract been fully performed.* By giving a judgment for *restitution of value received* by the [wrong doer] the court is trying to put the [injured party] in a position as good as that occupied by him *before the contract was made,* at least so far as that result may be brought about by requiring the [wrong doer] to pay the reasonable value of what he may have received from [the injured party] by way of part performance." (Emphasis supplied.) § 1112 at 598-99.

■ In the instant case, the money award actually resorted the parties to their former positions—it permitted the purchasers to recover the amount they had expended to purchase the property and to improve it

less the reasonable value of the use of the property. Thus the "damages" which were awarded were in the nature of restitution—as distinguished from damages for breach of contract. *See Farmer v. Groves,* 276 Or 563, 568, 555 P2d 1252 (1976); 5 Corbin, Contracts, § 1112, § 1115. Therefore, the trial court correctly permitted rescission of the contract and returned the purchasers to their former position. We find no reason to disturb the decree.

Affirmed.