370 So.2d 590 (1979)
Shirley Goodman, wife of/and Carl BERNOFSKY
v.
Rose Anne Teller, wife of/and Robert M. SCHWARTZ.
No. 9597.
Court of Appeal of Louisiana, Fourth Circuit.
January 12, 1979.
Rehearing Denied February 15, 1979.
On Rehearing April 10, 1979.
*591 Baldwin & Haspel, Robert R. Rainold and Robert R. Rainold, Jr., New Orleans, for plaintiffs-appellants.
Krieger & Krieger, I. Jay Krieger and David R. Paddison, New Orleans, for defendants-appellees.
*592 Post, Reinhardt & Rougelot, William H. Reinhardt, Jr., Metairie, for Gertrude Gardner, Inc., third party defendant-appellee.
Charles F. Barbera, Metairie, for Stan Weber & Associates, Inc., third party defendant-appellee.
Before STOULIG, BOUTALL and BEER, JJ.
Rehearing Denied for Schwartz February 15, 1979.
STOULIG, Judge.
Plaintiffs, Dr. and Mrs. Carl Bernofsky, appeal a judgment dismissing their action in redhibition.
On July 15, 1975, plaintiffs purchased property at 1351 Burbank Street in New Orleans for $45,000 from defendants, Mr. and Mrs. Robert Schwartz. On September 15, 1975, plaintiffs formally tendered title to the defendants demanding the sale be rescinded because (1) the property had latent defects that became apparent after they had moved into the house; and (2) vendors and their agent had misrepresented several important qualities of the house. The defense is that plaintiffs could have discovered the alleged defects and misrepresentation of which they now complain by simple inspection prior to sale. The vendors filed a third party claim against their real estate agent, Stan Weber & Associates, Inc., and the purchaser's agent, Gertrude Gardner, Inc. When the original suit was dismissed, the third party actions fell with the adverse judgment against plaintiffs.
After sifting through the volumes of testimony and exhibits, it becomes evident the plaintiffs' complaints are that the slab was a dish-shaped configuration that caused the flooring to be unlevel and they were given a diagram prior to sale showing the study measured 24 feet by 13 feet and only learned the length of this room was 4 feet shorter after moving into the house.
The first complaint, if established, would entitle plaintiffs to rescission under C.C. art. 2520, provided the defect was not one that could be detected by simple inspection. The record establishes the perimeter of the house is at a higher elevation than the center and that the floor slopes in many areas throughout. For example, the back bedroom, measuring 10½ feet by 12 feet, slopes as much as 45/8 inches in this one room. In other rooms throughout the house the levelness differential varies between 17/8 inches and 33/4 inches. These differentials in levelness were established by the expert testimony of a civil engineer and a slab foundation specialist, whose measurements established extensive instances of unlevelness. In short, the problem is substantial.
However, the purchasers' right to rescind a sale upon discovering redhibitory vices after the sale, conferred by C.C. art. 2520, is modified by C.C. art. 2521, which excludes apparent defects from the redhibitory vices. That article requires the buyer to discover any defects that he should find by a simple inspection. The extent to which the vendee is obligated to inspect is not limited to casual observation, rather the examination must be conducted with a view toward determining soundness. In Pursell v. Kelly, 244 La. 323, 152 So.2d 36, 41 (1963), Justice McCaleb, speaking for the Supreme Court, discussed what simple inspection entails, viz:
"Article 2521 of the Civil Code excludes, from the vices for which redhibition may be demanded, apparent defects `that is, such as the buyer might have discovered by simple inspection * * *'. Inspection, as defined by Webster's New International Dictionary, 2nd Ed., means a strict or prying examination. This connotes more than mere casual observation; it envisages an examination of the article by the vendee with a view of ascertaining its soundness. However, the Code limits the exclusion of warranty to those defects discoverable by a simple inspection. This, it is manifest, relieves the buyer of examining the inner or hidden parts of the object of the sale for the purpose of ascertaining the existence of latent defects.
"The proper test to be applied to this case, we think, as in all other cases of this kind, is whether a reasonably prudent buyer acting under similar circumstances, *593 would have discovered the presence of termite damage in the premises. * * *"
In this case the defense witnesses establish that the sloping was not ascertainable by simple inspection. Defendants and several of their friends testified that in frequent visits to the Schwartzes in their Burbank Avenue home they never noticed the sloping floors. They were all well acquainted with the defendants and had occasion to spend time in every room in their home. One lady, a friend who babysat often, described playing jacks with the children on the rear bedroom floor, which was measured to have one of the greatest degrees of unlevelness. If none of these people noted the problem, it would be unreasonable for us to conclude that the Bernofskys in their short inspection tours would have discovered it. Plaintiffs first became aware of the unlevel condition when they attempted to set up a bed after moving in.
An additional complaint is the misrepresentation of the size of the study. When plaintiffs' visited the Burbank property with their real estate agent (Dottie Ray of Gertrude Gardner) either the first or second time, Mrs. Schwartz gave Dr. Bernofsky an information sheet which included a diagram of the floor plan of the house. The dimensions of the den are shown as 24 feet by 13 feet. The evidence preponderates to the effect that the buyers did not learn that this room was only 20 feet long until after they took title.
Dr. Bernofsky, a biochemist engaged in leukemia research at Tulane Medical School, testified that one of the salient features of this house that prompted the offer was the size of the den. He had planned to use this as a study and build shelving to hold his extensive research materials. In moving a houseful of furniture from Minnesota to New Orleans, approximately one-fifth of the shipment contained research materials based on the amount of the moving bill that Tulane Medical School's grant reimbursed plaintiff for the expense of moving medical materials.
Mrs. Bernofsky also emphasized that the size of the study was the feature that attracted them to this particular house because her husband had numerous books and research materials to house. It might perhaps be argued that the testimony of plaintiffs, which is naturally favorable to them, might be colored; however, realtor Dottie Ray described how the Bernofskys discussed the den size and studied the information diagram at length before making the offer. It was her impression that the selling feature of the house was the size of the den, coupled with the location in an area where the Bernofskys wished to send their children to school. We point out here that Mrs. Ray and Gertrude Gardner have no liability whatsoever and this is obvious almost from the beginning of the trial; therefore, at the point where she did testify, there can be no suggestion that her testimony could have been influenced by a wish to exculpate her agency from liability.
It is not clear who was responsible for the mistake. The record indicated Cleo Carmichael, a Weber agent; Mrs. Carmichael's husband; and Robert Schwartz measured the rooms in the house. Whether the error in the length of the den is due to an inaccurate measurement or an improper transcription from notes to the finished information sheet is not explained. Insofar as the buyers' right to have the sale rescinded for this reason under C.C. art. 2529, how the error was made is unimportant; however, the buyers' right to a third party judgment does hinge on where the mistake lies.
In any event, C.C. art. 2529 provides:
"A declaration made in good faith by the seller, that the thing sold has some quality which it is found not to have, gives rise to a redhibition, if this quality was the principal motive for making the purchase."
This also is a factor for holding the Bernofskys are entitled to rescission. The study was not the size the vendors represented it to be and this was one of the principal motives that prompted them to purchase this house. In reaching this result we have considered whether the purchasers should have noticed this as inaccurate by simple *594 inspection and been estopped from recovery by C.C. art. 2521.
We think not. Several experienced realtors failed to detect the error. Mrs. Ray was aware that the measurements on the diagram were discussed before the offer was submitted and she did not know they were erroneous. Further, we often review testimony that reflects a witness' inability to accurately approximate measurements. Since the information sheet gave the exact dimensions, the purchasers had no reason to question their accuracy.
In addition, the information sheet gave inaccurate information on the age of the carpets and the air conditioning-heating unit. Perhaps no one single complaint would be sufficient to support the order of rescission, but when considered altogether, we think plaintiffs' proven complaints entitle them to the relief they seek.
The sellers' liability is proscribed by C.C. art. 2531 because the record leaves no doubt the mistaken declaration was made in good faith. Thus the sellers must reimburse them for the purchase price and reasonable expenses incurred in connection with the sale. Because they have occupied the property for more than three years at the time of this writing, they should be required to pay a reasonable rental for the use of the house. The sellers were not permitted to introduce the testimony of two realtors to establish rental value but by proffer we learn that one placed the rental value at $350, while a second placed it at $375. The proffer, consisting of direct and cross-examination, fully developed the theories upon which both experts rested their valuations. The trial court improperly excluded their testimony. While it is true neither had experience with rental in this area, the fact that there is little if any rental property in this neighborhood would prevent any realtor from becoming knowledgeable on rental values in the area through experience. We are more impressed with the expert who sets the $375 rental figure and will fix the monthly credit due at that amount.
We summarize the amounts to be refunded (the sale price and expenses occasioned by the sale) as follows:

Sale price $45,000.00
Moving expenses 3,457.74
Cost of loan appraisal 55.00
Closing costs $1,219.90
Less one year prepaid
 insurance premium 277.00 942.90
 _________
Bartlett Pest Control 200.00

Because the plaintiffs will be obligated to release the mortgage that now encumbers the property prior to or simultaneous with reconveyance, the defendants are to pay any expenses of reconveyance and releasing the mortgage. Defendants are further obligated to reimburse plaintiffs for all homestead charges (interest, insurance, taxes, etc.) paid on the mortgage which are not included in the reduction of the principal.
The exact dollar figure to be paid by the Schwartzes is not computable because we have no estimate on costs to reconvey the property nor do we know the period of time for which the rental credit must be allowed.
The third party demands are dismissed. No one seriously questions Gertrude Gardner's liability. As to the claim against Weber, the evidence is unclear as to who was responsible for the mistake. Schwartz participated in the measurement and he could not explain how the 24-foot study length was recorded. In order to be entitled to indemnification, it would be incumbent on the defendants to prove that the Weber representative was responsible for the mistake. Schwartz stated his eyesight was diminished and it is possible this is where the mistake came in. This of course is speculation, but any other conclusion we might reach as to fault would be equally speculative. Like any plaintiff, a third party claimant has the burden of proving his case by a preponderance of the evidence.
For the reasons assigned, the judgment appealed from is reversed in part and it is ordered that the plaintiffs, Shirley Goodman, wife of/and Carl Bernofsky, convey, free of all encumbrances and alienations, to defendants, Rose Ann Teller, wife of/and *595 Robert M. Schwartz, the following described property:
"ONE (1) CERTAIN LOT OF GROUND, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes and appurtenances thereunto belonging or in any wise appertaining situated in the Third District of this City, in square No. 45 of Oak Park Garden Addition, bounded by BURBANK STREET, ST. BERNARD AVENUE, SOLDIERS STREET and CARTIER AVENUE, designated as LOT NO. 7 on a survey made by Gilbert, Kelly and Couturie, Inc., Sur., dated December 21, 1967, revised on July 15, 1971, and revised on June 5, 1975, a copy of which is annexed to the Vendor's Act of Purchase, passed before me, Notary, this date, and according thereto, said LOT commences at a distance of 125.16 feet from the corner of BURBANK STREET and CARTIER AVENUE, measures thence 60 feet front on BURBANK STREET, the same in width in the rear, by a depth of 100 feet between equal and parallel lines.
"Improvements thereon bear the Municipal No. 1351 BURBANK STREET"
upon the payment by defendants to plaintiffs of the sum of $49,655.64. All notarial cost for the act of conveyance and cancellation charges are to be borne by the defendants. The credit for rental due defendants is to be computed at $375 per month from the date the property was conveyed to the plaintiffs to the day it is reconveyed to the defendants. In all other respects the judgment appealed from is affirmed. Costs of this appeal are to be borne equally by appellants and appellees.
REVERSED IN PART; AFFIRMED IN PART; AND RENDERED.

ORDER
The application for a rehearing of Rose Anne Teller, wife of/and Robert M. Schwartz is denied.
On the application of Mrs. Shirley Goodman, wife of/and Carl Bernofsky a partial rehearing is granted limited to the issues of:
1. Adjustment of rental award; and
2. Reimbursement of expenditures for the preservation of the property.
Matter is to be submitted on briefs only. Brief on behalf of Mr. and Mrs. Carl Bernofsky is to be filed by February 23, 1979 and the reply of Mr. and Mrs. Robert M. Schwartz by March 5, 1979.

ON REHEARING
We granted rehearing in this matter to reconsider what amount of rental credit, if any, should be awarded the vendors (Mr. and Mrs. Robert M. Schwartz) and whether the costs and expenditures awarded the vendees (Mr. and Mrs. Carl Bernofsky) in the original decree are adequate.
The Bernofskys urge that no rental credit be allowed, pointing out that the sellers refused a rescission of the sale almost four years ago when the vendees tendered return of the property. They further point out that their continued occupancy was caused by the sellers' refusal to cancel the sale; therefore, they were compelled to continue living in a home they considered defective.
That the sellers declined to rescind the sale when the property was first tendered is no basis for disallowing rent. Before a suit for redhibition may be filed by any purchaser, he must first tender the return of the property and offer to restore things to the pre-sale status quo. This tender is a prerequisite to the maintenance of any action in redhibition. Sokol v. Bob McKinnon Chevrolet, Inc., 307 So.2d 404 (La.App. 4th Cir. 1975). Under C.C. art. 2531[1] the sellers are entitled to a credit for the value of the use of the thing. Obviously *596 there is no penalty on the seller refusing tender other than those stipulated in the Civil Code.
The Bernofskys alternatively complain that the rental was excessive considering the condition of the home. We find no merit in this contention. The three-foot short measurement in the den does not render the house uninhabitable nor do the unlevel floors render it unlivable. While we have allowed redhibition because of the circumstances in this case, particularly the Bernofskys' requirements in buying a home, we did not conclude this dwelling was unfit for residential purposes.
We summarize purchasers' complaints, which, when considered together, assert the sellers are being unjustly enriched by the rent credit. It is true years have passed while this matter has made its way through the trial court to this initial stage of appellate review; however, the sellers cannot be penalized for this time lapse. Article 2531 permits credit for use of the property which the sellers are entitled to have.
We agree that the Bernofskys are entitled to the sum of $272 they expended to replace the heat exchanger six months after they moved in the house, particularly when they were told this equipment was recently installed.
We also think the Bernofskys are entitled to interest at the rate of 7% per annum on their $9,000 cash deposit from the date of sale to the date the rescission is completed. It should be noted that the return of the $9,000 cash deposit is included in the $45,000 sale price awarded in our original decree.
For the reasons assigned, our original decree is amended to add a $272 award to the Bernofskys, plus 7% per annum interest on the $9,000 deposit from date of the original sale to date the act of rescission is passed. Our original decree is amended as herein provided and as amended is reinstated.
ORIGINAL DECREE AMENDED AND REINSTATED.
NOTES
[1] C.C. art. 2531 provides in part: "The seller who knew not the vices of the thing is only bound to repair, remedy or correct the vices as provided in Article 2521, or if he be unable or fails to repair, remedy or correct the vice, then he must restore the purchase price, and reimburse the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, subject to credit for the value of any fruits or use which the purchaser has drawn from it."