610 P.2d 201

**H. E. (Bud) ROBISON d/b/a Robison Realty Company, Plaintiff-Appellee,**

v.

**Beverly KATZ, Defendant-Appellant,**

**Opal A. Campbell and Sam Q. Campbell, Defendants-Appellees.**

**Beverly KATZ, Counterclaimant, Cross-Claimant-Appellant,**

v.

**H. E. (Bud) ROBISON d/b/a Robison Realty Company, Counterdefendant-Appellee.**

**Opal A. CAMPBELL, Plaintiff-Appellee,**

v.

**Beverly KATZ, Defendant-Appellant.**

**Beverly KATZ, Defendant-Appellant, Counterclaimant, Cross-Claimant,**

v.

**SUTIN, THAYER & BROWNE, Appellees.**

No. 3665.

Court of Appeals of New Mexico.

March 18, 1980.

Rehearing Denied April 2, 1980.

Writ of Certiorari Denied April 18, 1980.

Paula Tackett, Lynn Pickard, Pickard & Singleton, Santa Fe, for defendant-appellant.

Kevin V. Reilly, Norman S. Thayer, Sutin, Thayer & Browne, Charles E. Barnhart, Barnhart & Oliver, P. A., Henry G. Coors, Robert N. Singer, Coors, Singer & Stratton, Albuquerque, for plaintiffs-appellees.

## OPINION

LOPEZ, Judge.

This case arises out of a real estate transaction which the vendee claims she was induced to enter by the fraudulent misrepresentations of the principal vendor and the real estate broker. The issues we consider in this appeal are: 1. whether rescission of a contract may be granted when the defrauded party is unable to restore the other party to the *status quo ante*; 2. whether a party who obtains rescission is also entitled to consequential damages; 3. whether punitive damages are proper in the circumstances of this case; 4. whether a party who failed to object below can raise the issue of excessive attorneys' fees on appeal; and 5. whether a civil cause of action by one party to a telephone conversation exists against the other party who allowed a third person to listen on an extension and record the conversation.

This court has jurisdiction over this appeal pursuant to § 34–5–8, N.M.S.A. 1978. Defendant Campbell's motion to dismiss for lack of jurisdiction was denied by this court on September 17, 1979. Although appellant Katz filed a petition in bankruptcy in federal court in Albuquerque on November 16, 1978, those proceedings do not bar our consideration of this appeal, since the trustee in bankruptcy abandoned the assets connected with this appeal on December 21, 1978. Although a determination of bankruptcy is pending in federal court, a state court may consider claims involving property which has been abandoned by the trustee in bankruptcy. *Vybiral v. Schildhauer*, 144 Neb. 114, 12 N.W.2d 660 (1944). Katz is the proper party to pursue this appeal; because, when a trustee in bankruptcy abandons an asset, the property or right reverts to the bankrupt. *Abo Land Co. v. Tenorio*, 26 N.M. 258, 191 P. 141 (1920). The court may determine Katz' assets and liabilities with respect to the subject matter of this suit, as both assets and liabilities have been abandoned by the trustee in bankruptcy. A trustee who abandons an asset also abandons any liabilities that accompany it. *In re Polumbo*, 271 F.Supp. 640 (W.D.Va.1967).

Plaintiff-appellee Bud Robison brought this suit in the District Court of Bernalillo County for a declaratory judgment pursuant to §§ 44–6–1 et seq., N.M.S.A.1978. Robison requested the trial court to determine his liability, if any, for misrepresentations made in connection with the sale of the Green Valley Mobile Home Park to defendant-appellant Beverly Katz. Robison was the real estate broker for the owners of the park, defendants-appellees Opal Campbell and Sam Q. Campbell (hereafter Campbell). The park was listed exclusively with him. Katz counterclaimed against Robison and cross-claimed against the Campbells on the basis of fraud, misrepresentation, and breach of fiduciary duty, seeking rescission and consequential and punitive damages. Campbell cross-claimed against Robison for damages for abuse of privacy for having had a third party listen to and record some of their telephone conversations. She also filed a suit against Katz for the collection of rent due on a house owned by Campbell

in Los Alamos. The rental arrangement had been part of the trailer park real estate transaction, and the two cases were consolidated.

The trial court found that Robison and Campbell had negligently misrepresented certain material facts to Katz on which she had relied in deciding to purchase the trailer park. On these grounds, it awarded Katz $87,585 in damages from which it allowed Campbell various set-offs, thereby reducing Katz' total award to $26,789 plus costs. Neither consequential nor punitive damages were allowed. The court granted an attorneys' charging lien to the firm of Sutin, Thayer and Browne, Katz' attorneys, for $49,099.26 on the proceeds of the judgment in her favor. Campbell was awarded $3,000 plus costs and attorneys' fees against Robison for the unauthorized recordation and transcription of the telephone calls.

Katz raises six points on appeal, asserting that: 1. the court erred in denying rescission; 2. the court incorrectly set off the balance due on the real estate contract against the damages awarded Katz; 3. the court's computations of Katz' monthly profit was incorrect; 4. & 5. Katz should have been awarded consequential damages and punitive damages; and 6. the attorneys' fees granted in the charging lien were excessive. The Sutin firm appeals the manner of computing Katz' final award of damages which has the effect of giving Campbell's set-offs priority over the attorneys' charging lien. Robison appeals the award of damages against him in favor of Campbell. We consider all of these issues in order, except Katz' points 2 and 3 and the Sutin firm's appeal. These issues are moot because we allow rescission.

### 1. *Rescission*

For the purchase of the park and three trailers located on it, Katz conveyed to the Campbells her house in Los Alamos, a duplex, valued at $57,717, made a downpayment of $20,000 in cash, and signed a real estate contract with the Campbells under which she assumed the underlying mortgages and real estate contracts on the park and

agreed to pay the Campbells $30,804.47 plus interest. Katz then rented an apartment in the duplex from Campbell, and Campbell rented a trailer space in the park from Katz. By the time of trial, both parties claimed the other owed them rent.

Katz made all the payments on the underlying mortgages and real estate contracts until August 1977, when she defaulted on the Stepnoski contract. Stepnoski then terminated the contract. This happened before trial. Between the time of closing and the time of trial, Katz also sold or mortgaged the trailers she had bought from Campbell.

The trial court found that Campbell, who had no contract with Katz before the closing, failed to disclose the poor condition of the water, septic, gas and electrical systems in the park. She did not ensure that the information she supplied Robison was accurate, nor that Robison disclose material and accurate information to Katz. Robison failed to investigate the information supplied to him by Campbell or to check information he had acquired about the park from other sources. He failed to inform Katz that the septic and water systems in the park were old and inadequate; he represented the repair and maintenance expenses, including sewer and septic costs, as $700 per year, when in fact they had cost the Campbells in excess of $7,700 per year; he falsely asserted that the park was in good operating condition; and, knowing Katz' needs and experience, he misrepresented the park as a good business investment for her.

The court determined that Robison and Campbell negligently misrepresented to Katz the physical condition of the park. It concluded that 1) since the misrepresentations were material and justifiably relied upon by Katz to her detriment, Katz would be entitled to rescission; but that 2) Katz' inability to return the trailer park and restore the Campbells to the *status quo ante* barred her from obtaining that remedy. Only the second part of the conclusion is challenged on appeal. Katz asserts that rescission is proper, even when the parties

cannot be put into the position of the *status quo ante,* considering the circumstances of the case. We agree with Katz.

■ The general rule in New Mexico is that rescission should be granted a party who, in entering a contract, justifiably relied on a misrepresentation of a material fact, irrespective of the good or bad faith of the party making the misrepresentation. *Prudential Ins. Co. of America v. Anaya,* 78 N.M. 101, 428 P.2d 640 (1967); *Jones v. Friedman,* 57 N.M. 361, 258 P.2d 1131 (1953); *see, Maxey v. Quintana,* 84 N.M. 38, 499 P.2d 356 (Ct.App.), *cert. denied sub nom. Jack Dailey Realty, Inc. v. Maxey,* 84 N.M. 37, 499 P.2d 355 (1972); *Thrams v. Block,* 43 N.M. 117, 86 P.2d 938 (1938). *Accord,* Dobbs Remedies § 9.1 (1973) (plaintiff may obtain rescission even if he does not show an actual intent by the defendant to deceive). It is immaterial whether the misrepresentations were made directly by a party to the contract, or by his agent. *Thrams, supra.*

■ Generally, the purchaser is allowed to rescind a contract only if he can place the vendor in the *status quo ante. Gottwald v. Weeks,* 41 N.M. 18, 63 P.2d 537 (1936); 17 Am.Jur.2d *Contracts* § 512 (1964). However, this rule need not be iron-clad, as the trial court assumed. In several states, it is applied according to equitable principles. *Delta Investing Corp. v. Moore,* 366 F.2d 516 (6th Cir. 1966); *Jennings v. Lee,* 105 Ariz. 167, 461 P.2d 161 (1969); *Spencer v. Deems,* 43 Cal.App. 601, 185 P. 671 (1919); *Limoli v. Accettullo,* 358 Mass. 381, 265 N.E.2d 92 (1970); *see,* 17 Am.Jur.2d, *supra,* § 514; *see generally, Rhoads v. Leonard,* 113 F.Supp. 411 (W.D.Okla.1953).

In *Gottwald, supra,* the Supreme Court indicated that the rule was not to be rigidly applied in New Mexico. It stated that strict compliance was not necessary where it "has been rendered impossible by circumstances for which the purchaser is not responsible, or for which the vendor is responsible." *Id.* at 21, 63 P.2d at 538.

Considering the circumstances of the case before us, we find that it is inequitable to deny rescission to the purchaser. Her inability to restore the trailer park to the Campbells results from termination by Stepnoski of an underlying real estate contract after the latter failed to receive a monthly payment. While at the time of purchasing the park, Katz assumed the obligation to pay on this contract, Campbell was also liable to Stepnoski [*Bradstreet v. Gill,* 22 N.M. 202, 160 P. 354 (1916)] and the court found that both Katz and Campbell had defaulted. The evidence is uncontroverted that at the time of the default, Campbell knew that Katz was in financial difficulty and might not be able to make all underlying payments. Campbell could have made this payment to preserve the property. More importantly, at the time Katz filed her cross-claim for rescission, and on the original trial date, she was in the position to restore the trailer park to Campbell. Had the trial been held as originally scheduled, on July 27, 1977, Katz would have been entitled to rescission, as the default did not occur until a month later. The trial was postponed at the request of Robison and Campbell, who filed a motion for a continuance on July 20, 1977. Katz opposed the motion, stating that "[i]f this case is not tried on the 27th and 29th of July, Katz may and probably will be forced to default because of her dire financial condition. * * * " One month later, Katz failed to make the payment on the Stepnoski contract.

■ The evidence is also uncontroverted that Katz never received notice of default from Stepnoski, but that when she learned of the existence of the default letter from her lawyer, she attempted unsuccessfully to make the delinquent payment from the rent money she had just collected. Although Stepnoski's termination of the contract is being contested in another court, Katz is entitled to rescission regardless of the outcome in that case. If the trailer park property is lost, its loss should fall on Campbell, whose omissions and negligence in overseeing the information supplied to Katz by Robison are grounds for rescission of the contract. Where the conduct of one party makes it equitable that he should suffer the

loss which must be borne by one of them, the strict rule requiring complete restoration as a prerequisite for rescission does not apply. *See, generally,* Restatement of Restitution § 66, Comment a. (1937); *see also, Id.,* Comment d.

When restitution is complex, the court granting rescission may order an accounting between the parties. *Farnsworth v. Feller,* 256 Or. 56, 471 P.2d 792 (1970). The purchaser is entitled to the return of all consideration paid for the land, with interest, less the fair rental value of the property while it was in his possession. *Thrams, supra; Gottwald, supra.* He must also account for any waste done by him, including the removal of buildings or appurtenances from the land. *Id.*

An accounting between Katz and Campbell is appropriate because of the complexity of the situation. Katz is entitled to the return of her Los Alamos house, her downpayment, and any other payments made on the property, including payments on underlying real estate contracts and mortgages, plus interest. From this should be deducted the fair rental value of the trailer park while it was in her possession, excluding the trailer space used by Campbell. Similarly, Campbell should be required to pay Katz the fair rental value of the Los Alamos house, excluding the apartment used by Katz, for the time Campbell was in possession of the house. Other rental adjustments may also be necessary. Lastly, the accounting should include payment to Campbell of the value of the original trailers sold or mortgaged by Katz.

2. *Consequential or Special Damages*

Katz contends that, along with rescission, she should recover whatever money is necessary to restore her to her position prior to making the contract. We agree, with the limitations that 1) only those expenses be recovered which must have been or should have been, contemplated by Robison, the party with whom Katz conferred, in whom she confided, and on whom she relied, as the probable consequence of his misrepresentations; and 2) these damages be assessed against Robison only.

It has not been decided in New Mexico whether the granting of rescission precludes an award of restitutionary damages. In *Thrams, supra,* the Supreme Court specifically refused to decide if a plaintiff who is granted rescission of a contract due to the false representations of the vendor's agent is also entitled to special damages. Damages for restitution are different from damages for breach of contract; and the former are permissible to restore the plaintiff to his former position when rescission is granted because of fraud. *Kinkade v. Markus,* 38 Or.App. 131, 589 P.2d 1142 (1979). Several other states allow the recovery of restitutionary damages along with rescission when fraud or misrepresentations is the cause of the claim. *Lobdell v. Miller,* 114 Cal.App.2d 328, 250 P.2d 357 (1952); *Bernofsky v. Schwartz,* 370 So.2d 590 (La.App.1979); *Mock v. Duke,* 20 Mich.App. 453, 174 N.W.2d 161 (1969); *Sawyer v. Pierce,* 580 S.W.2d 117 (Tex.Civ. App.1979); N.Y.Civ.Prac.Law 3002(e) (McKinney). We believe that restitutionary damages conform with the purpose of rescission, which is to put the defrauded party back in as good a position as he occupied before entering the contract. Consequently, we hold that such damages may be awarded along with rescission.

However, the damages should be limited. The New Mexico Supreme Court has stated that if damages were recoverable in a suit for rescission, they would be special damages. *Thrams, supra.* Special damages are defined as "[t]hose which are the actual, but not the necessary, result of the injury complained of, and which in fact follow it as a natural and proximate consequence in the particular case. * * *" Black's Law Dictionary 469 (rev. 4th ed. 1968). "Special" damages are the same as "consequential" damages. *See Dobbs, supra,* § 3.2. Such damages are limited to those expenses which must have been or should have been contemplated as probable consequences of the fraud by the parties whose actions are the basis for the rescission. *Thrams, supra.* We affirm the law set out in *Thrams* in so

far as it limits the damages of a defrauded party who also obtains rescission of the contract. Since, in this particular case, the record shows that Katz had no dealings with Campbell before the closing of the transaction and that everything was arranged through Robison, the damages will be limited to those which must have been or should have been contemplated by Robison as the probable consequences of the misrepresentations.

The special damages should be paid by Robison. A real estate broker is liable for damages to a vendee if a fiduciary relationship existed between them. *Barber's Super Markets, Inc. v. Stryker*, 84 N.M. 181, 500 P.2d 1304 (Ct.App.), *cert. denied*, 84 N.M. 180, 500 P.2d 1303 (1972). The trial court found that this relationship existed between Robison and Katz. Robison was also the agent of Campbell, and was paid $10,000 in commissions by her for the sale of the trailer park. Generally, an agent is not liable to the vendee for expenses incurred by him as a result of the agent's misrepresentations when the remedy obtained is rescission. *Grandi v. LeSage*, 74 N.M. 799, 399 P.2d 285 (1965). However, *Grandi*, differs from the present case in that the agent there was not a fiduciary of the buyer. Since Robison was a fiduciary of Katz, it is proper that he be required to pay any special damages to which she is entitled. We limit her recovery from Robison to special damages in order to prevent her from obtaining a double recovery. Any damages beyond special damages would be inconsistent with rescission.

While normally the vendor would be liable for the special damages, *see generally, Thrams, supra*, it would be inequitable to hold Campbell liable in the circumstances of this case. "[R]escission calls off the deal, but restitution remains to be accomplished by whatever mode is deemed best suited." *Dobbs, supra* § 4.3 at 255. Since the rescission will be effected regardless of whether Campbell recovers back the trailer park, she is the party who will bear the loss of the park, if indeed it is lost. She should not be required to suffer further loss through liability to Katz for special damages.

3. *Punitive Damages*

Katz asserts she is entitled to punitive damages against Robison. We agree, if she is able to prove special damages.

Punitive damages are not awarded as compensation to the party wronged, *Christman v. Voyer*, 92 N.M. 772, 595 P.2d 410 (Ct.App.1979), but as punishment of the offender. *Bank of New Mexico v. Rice*, 78 N.M. 170, 429 P.2d 368 (1967). In the proper circumstances, they are recoverable against a broker who has breached his fiduciary duty. *Siler v. Gunn*, 117 Ga. App. 325, 160 S.E.2d 427 (1968); 12 Am. Jur.2d *Brokers* § 83 (1964). The trial court found that Robison was a fiduciary of Katz, and that he breached his fiduciary duty to her.

In New Mexico, punitive damages may be awarded in tort actions, *Samedan Oil Corp. v. Neeld*, 91 N.M. 599, 577 P.2d 1245 (1978), and in breach of contract actions. *Curtiss v. Aetna Life Insurance Co.*, 90 N.M. 105, 560 P.2d 169 (Ct.App.), *cert. denied*, 90 N.M. 7, 558 P.2d 619 (1976). In either action, the damages are awarded only when there is a showing of malice or of reckless or wanton conduct by the defendant. *See, Samedan, supra ; Curtiss, supra ; Loucks v. Albuquerque National Bank*, 76 N.M. 735, 418 P.2d 191 (1966). Malice, for the purposes of punitive damages, denotes the intentional doing of a wrongful act. *Curtiss, supra ; Loucks, supra*. The trial court did not find that Robison acted intentionally. Consequently, no malice may be imputed to him. The court did find, however, that he made material misrepresentations in reckless disregard for their truth. This finding was not challenged. Reckless behavior will warrant the award of punitive damages, *Samedan, supra ; Curtiss, supra ; Loucks, supra*, if the injured party is able to prove actual damages. *Christman, supra ; Grandi, supra*.

"Actual damages" are defined as "the amount awarded to a complainant in compensation for his actual and real loss or

injury, as opposed on the one hand to 'nominal' damages, and on the other to 'exemplary' or 'punitive' damages." Black's Law Dictionary, *supra* at 467. Since Katz is entitled to special damages from Robison, and his conduct was found to be reckless, she may also recover punitive damages against him. Any special damages that Katz is able to prove will also be actual damages. If, on remand, she is unable to prove special damages, she cannot be awarded punitive damages. Her recovery of the latter is contingent upon proof of the former. *See, Christman, supra.*

### 4. Attorneys' Fees

Katz raises for the first time the issue of the excessiveness of her attorneys' fees. We allow her to raise the issue now.

■ The rule is that the appellate court cannot consider an issue raised for the first time on appeal. *Phillips v. United Service Auto. Ass'n,* 91 N.M. 325, 573 P.2d 680 (Ct.App.1977). However, N.M.R.Civ.App. 11, N.M.S.A.1978 allows an exception to the requirement that objection be made below. It states in part:

> [I]f a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him.

■ This exception applies to the case at bar. On March 13, 1978, the trial court entered its judgment granting a charging lien to the Sutin firm for $49,099.26. The record indicates that this firm had represented Katz from May 2, 1977, through the trial, and was still representing her at the time the judgment was entered. It is not reasonable to expect the firm to object to their own fees as being excessive. Katz had no opportunity to object to the attorneys' fees as being excessive at the time the judgment awarding the charging lien was entered. She may properly raise the issue on appeal.

■ A court may hold void a provision for attorneys' fees in a note or contract where the fees are excessive or oppressive. *Bank of Dallas v. Tuttle,* 5 N.M. 427, 23 P.

241 (1890). It is clearly within the equitable power of the court to consider and reduce excessive fees. *Budagher v. Sunnyland Enterprises, Inc.,* 90 N.M. 365, 563 P.2d 1158 (1977). There being no evidence in the record of the terms of the fee agreement between the Sutin firm and Katz, or of the hours of work performed by the firm, there is nothing to support either the reasonableness or excessiveness of the fees. We remand and order the trial court to hold a hearing on this issue.

■ Because we hold that the proper remedy in this case is not damages with a set-off, but is rescission with an accounting between Campbell and Katz, the issue raised by the Sutin firm concerning the priority of its attorneys' charging lien over the setoff is moot. We note, however, that the lien does have priority over any final monetary judgment awarded to a party in the cause. *Forrest Currell Lumber Co. v. Thomas,* 82 N.M. 789, 487 P.2d 491 (1971); *Hanna Paint Mfg. Co. v. Rodey, Dickason, Sloan, Akin & Robb,* 298 F.2d 371 (10th Cir. 1962). If the final result of the accounting between Campbell and Katz is that Katz owes Campbell a certain sum of money, Campbell's judgment may be paid out of whatever judgment is awarded Katz against Robison, but only after the Sutin firm has been paid the amount the court determines to be reasonable for its services.

### 5. Interferences with Communications

Robison appeals the $3,000 damages plus costs and attorneys' fees awarded to Campbell and assessed against him for violation of the New Mexico law prohibiting abuse of privacy by interference with communications. We reverse this award.

The trial court found that on three occasions Robison returned calls to Campbell and had a third party listening on an extension who recorded the conversation in shorthand. Robison does not contest this finding. He does contest the conclusion by the court that this activity was in violation of State law.

Campbell argues that we should not consider Robison's appeal because he failed in his brief to give the page number in the transcript where his requested conclusion of law could be found. This argument is without merit. The two cases cited by Campbell, *Wilson v. Albuquerque Board of Realtors*, 81 N.M. 657, 472 P.2d 371 (1970), and *Gonzales v. Gonzales*, 85 N.M. 67, 509 P.2d 259 (1973), do not help her. *Wilson* involves an exception to, rather than an application of, the rule Campbell asserts we should follow. *Gonzales* concerns appellate review of the trial court's finding of fact. We are here concerned with review of a conclusion of law.

■ N.M.R.Civ.App. 9(d), N.M.S.A.1978 states:

Assertion of fact must be accompanied by references to the transcript showing a finding or proof of it. Otherwise the court *may* disregard the fact. * * * [Emphasis added.]

Arguably, this rule does not apply to conclusions of law. If it does apply, at most it would give us the *option* of disregarding the fact that Robison tendered a conclusion of law contrary to that which the trial court found to be the law. This would not help Campbell, because whether or not an appellant ever submitted conclusions of law is immaterial to our review of the trial court's conclusions of law when these are separate from the court's findings of fact. *Gonzales v. Garcia*, 89 N.M. 337, 552 P.2d 468 (1976).

Section 30–12–11, N.M.S.A.1978 gives a civil cause of action to a person whose oral communication is intercepted in violation of §§ 30–12–1 to 30–12–11, N.M.S.A.1978. It is claimed that Robison violated § 30–12–1, N.M.S.A.1978, which makes unlawful interference with a phone conversation a misdemeanor, and states in part:

Interference with communications consists of knowingly:

* * * * * *

C. reading, hearing, interrupting, taking or copying any message, communication or report intended for another by telegraph or telephone without his consent * * *.

Having found no New Mexico case law interpreting § 30–12–1, we turn to federal case law which interprets a federal statute prohibiting the unlawful interception of phone messages. The federal statute reads in part:

[N]o person not being authorized by the sender shall intercept any communications and divulge or publish the existence; contents, substance, purport, effect, or meaning of such intercepted communication to any person * * *.

Section 605 of the Federal Communication Act of 1934, 48 Stat. 1103, 1104. In *Rathbun v. United States*, 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134 (1957), the Supreme Court found that this federal statute had not been violated when one of the parties to a phone conversation consented to a third party listening on an extension. The Court came to this conclusion because it could find no reason to believe that Congress intended to place a severe restriction on the use of telephone extensions by denying the right, of a telephone subscriber to allow family members, employees, friends, or even the police, to listen to a conversation to which the subscriber is a party.

■■ Following this reasoning, we do not understand that the Legislature intended, by § 30–12–1, to expose to criminal liability every person with a telephone extension who allowed someone else to listen to his conversation. In 1979 the Legislature clarified § 30–12–1 by amending it to read:

Interference with communications consists of knowingly and without lawful authority:

* * * * * *

C. reading, interrupting, taking or copying any message, communication or report intended for another by telegraph or telephone *without the consent of a sender or intended recipient thereof* * *. [Emphasis added.]

Section 30–12–1, N.M.S.A.1978 (Supp.1979). Under current law, the consent of one of the parties to a third person listening to the conversation is all that is necessary to remove the activity from the purview of the

statute. We believe that this same result was intended by the Legislature under the statute before it was amended. As for transcribing the conversation, it clearly would not have been illegal if Robison himself had written the conversation down in shorthand. The fact that he had someone else do it instead does not make the activity unlawful. The activities of Robison did not violate § 30–12–1, N.M.S.A.1978, and Campbell has no civil cause of action against him.

We reverse the trial court's award of damages to Katz as against Campbell, and reverse the award of damages to Campbell as against Robison. The case is remanded to the trial court with an order to grant Katz rescission of the contract with Campbell. Rescission is to be accompanied with an accounting between Katz and Campbell. On remand, the court is also to hold hearings to determine 1) what special damages, and what punitive damages, if any, may be awarded Katz as against Robison, and 2) whether the attorneys' fees claimed by the Sutin firm are excessive.

The judgment of the trial court is reversed and the cause is remanded for proceedings consistent with this opinion.

IT IS SO ORDERED.

HERNANDEZ, J., concurs.

ANDREWS, Judge (dissenting in part and concurring in part).

The district court was correct. Rescission is not a proper remedy in this case. To warrant rescission of contract, there must be a substantial failure of consideration. *Samples v. Robinson*, 58 N.M. 701, 275 P.2d 185 (1954). Rescission is not warranted by mere breach of contract not so substantial and fundamental as to defeat the object of the parties; before partial failure of performance by one party gives the other the right to rescission, the act failed to be performed must go to the root of the contract, or the failure to perform must be in respect of matters which would render performance of the remainder a thing different in substance from that contracted for. *Yucca Mining & Petroleum Co. v. Howard C. Phillips Oil Co.*, 69 N.M. 281, 365 P.2d 925 (1961).

Here, although the court concluded that the "misrepresentations and nondisclosures by Robison to Katz were material," and that "Katz justifiably relied upon them to her detriment, loss, and damages," the court did not find a substantial failure of consideration and the evidence would not support such a finding. Katz made all payments on the underlying mortgages and real estate contracts existing on the park as those payments came due from July, 1976, until August, 1977, when she herself allowed the contract with Campbell to go into default.

However, much of the confusion in the case might have been avoided if the court had used the proper measure of damages— the difference between the "before" and "after" fair market values of the trailer court business. *Duke City Lumber Company, Inc. v. Terrel*, 88 N.M. 299, 540 P.2d 229 (1975). The court's mistake was that it undertook to measure damages by balancing the profits and expenses incurred by each party, thereby miring itself in the problem of understanding Ms. Katz' incomplete records of her transactions concerning the trailer park. The market value, or fair market value of a business enterprise, or of any other property, is not dependent upon the owner's financial capacity to operate or improve the enterprise or property. It is what a willing buyer would pay and a willing seller would accept for it in its condition at the time and place in question. *Duke City Lumber Company, Inc. v. Terrel, supra.*

I concur in other portions of the opinion.